[No. F013885. Fifth Dist. June 13, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIE ANN HENSON, Defendant and Appellant.

**COUNSEL**

Houghton Gifford, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Edgar A. Kerry and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, Acting P. J.—**

### INTRODUCTION

Julie Ann Henson was a passenger in an open convertible stopped for a moving violation on August 2, 1989. Certain plain-view observations by the detaining officers eventually led to the discovery of methamphetamine and marijuana in Henson's purse. She was charged by information with (count I) a felony violation of Health and Safety Code section 11378 (possession for sale of methamphetamine) and (count II) a misdemeanor violation of Health and Safety Code section 11357, subdivision (b) (possession of not more than 28.5 grams of marijuana).

Following a court trial on March 19, 1990, Henson was convicted of the lesser included felony offense of a violation of Health and Safety Code

section 11377, subdivision (a) on count I (possession of methamphetamine) and the misdemeanor violation of Health and Safety Code section 11357, subdivision (b) charged in count II. At sentencing, the trial court suspended imposition of sentence and admitted Henson to probation. As a condition of felony probation, appellant was ordered, inter alia, to "[p]articipate in an AIDS Education program pursuant to Section 1001.10 of the Penal Code ."[1]

At the time pertinent, section 1001.10 read:

"(a) The judge shall require any person described in subdivision (b), as a condition of either sentencing the person to probation or of permitting the person to participate in a drug diversion program to agree to participate in an AIDS education program. Testing for AIDS antibodies shall be offered but no person described in subdivision (b) shall be required to be tested.

"(b) This section shall apply to any person who has either been convicted of, or pled guilty to, any of the following:

"(1) A violation of subdivision (a) of Section 11377 of the Health and Safety Code, Section 11550 of the Health and Safety Code, Section 4143 or 4149 of the Business and Professions Code, or of subdivision (f) of Section 647 if the offense involves intravenous use of a controlled substance.

"(2) A violation of subdivision (a) or (b) of Section 647."

Section 1001.10 was enacted in 1988 as a part of an acquired immune deficiency syndrome (AIDS) intervention/prevention program in certain drug and prostitution cases. (Stats. 1988, ch. 1243.) It requires a court placing a person on probation following a conviction for certain offenses, including a violation of Health and Safety Code section 11377, subdivision (a), to impose as a term of probation a requirement that the person so convicted "agree to participate in an AIDS education program." (§ 1001.10, subd. (a).) The Attorney General agrees with appellant that section 1001.10 is ambiguous, as it is unclear from the language of the statute whether a conviction under any of the designated statutes in subdivision (b)(1) must involve intravenous use of a controlled substance before the mandatory probation condition of AIDS education applies.

THE PARTIES' CONTENTIONS

Although appellant's purse contained several plastic bindles totaling 17.28 grams of a white powder containing methamphetamine, and what was

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

described as a small "coke straw," there was no paraphernalia seized that would support a finding of intravenous use. The paraphernalia seized was consistent with appellant's admitted nasal ingestion of methamphetamine beginning in early 1989. Respondent appears to concede the evidence adduced at trial does not indicate intravenous drug use by appellant.

While subdivision (a) of section 1001.10 mandates the judge require *any* person convicted of an offense described in subdivision (b) agree to AIDS education as a condition of probation, appellant submits the lack of a comma between "647" and "if" in subdivision (b)(1) leaves the statute open to two plausible interpretations: intravenous use of a controlled substance must be involved in a conviction under any of the statutes enumerated in subdivision (b)(1) for the AIDS education condition of probation to apply, or intravenous use of a controlled substance need only be involved if the conviction falls under subdivision (f) of section 647. (See 1A Sutherland Statutory Construction (4th ed. 1985 (rev.)) Punctuation, § 21.15, pp. 134-135.)

Appellant maintains intravenous use is a requirement and that the condition of probation was imposed here in error, as her conviction of a violation of Health and Safety Code section 11377, subdivision (a), did not involve *intravenous* use of a controlled substance. Respondent concurs in appellant's interpretation, to wit, that the mandatory condition of probation only applies if a conviction under any of the enumerated offenses set out in section 1001.10, subdivision (b)(1) involves intravenous use of a controlled substance. However, respondent maintains that the trial court did not err in imposing an AIDS education requirement in this case, because it was within the court's discretion (*People* v. *Bauer* (1989) 211 Cal.App.3d 937, 940 [260 Cal.Rptr. 62]) as it reasonably related to appellant's Health and Safety Code section 11377, subdivision (a) conviction. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].) After a review of the legislative history of section 1001.10 and relevant case law, we conclude respondent is correct on both points.

STATUTORY CONSTRUCTION

■  While punctuation may be of some assistance in the construction of a statute, it is not of controlling importance. (*Estate of Coffee* (1941) 19 Cal.2d 248, 251 [120 P.2d 661]; *Paris* v. *County of Santa Clara* (1969) 270 Cal.App.2d 691, 699 [76 Cal.Rptr. 66].) Indeed, the United States Supreme Court once noted that "[p]unctuation is a most fallible standard by which to interpret a writing; . . ." (*Ewing* v. *Burnet* (1837) 36 U.S. 41, 54 [9 L.Ed. 624, 630].) However, punctuation is a part of the statute, and should be

considered in its interpretation in an attempt to give the statute the construction intended by the drafter and to seek and follow the intent of the Legislature. (*Pritchard* v. *Liggett & Myers Tobacco Company* (3d Cir. 1965) 350 F.2d 479, 490; 2A Sutherland Statutory Construction (4th ed. 1984 (rev.)) Punctuation, § 47.15, pp. 156-160.)

■ As stated by the California Supreme Court, "[w]here a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. [Citations.]" (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) As stated in *California Mfrs. Assn.*, "the legislative history of the statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining the statutory purpose. . . ." (*Ibid.*)

### LEGISLATIVE HISTORY

Construction begins with the legislative history of this bill, obtained from the California State Archives in Sacramento. Assembly Bill No. 2374 (AB 2374) was introduced by Assemblyman Statham in March 1987 as a bill to expand childcare services and implement flexible employment policies for state employees with minor children. The bill was approved in the Assembly and passed to the Senate where it was gutted and the content amended to create the "AIDS Prevention Program in Drug Abuse and Prostitution Cases."

In the initial, August 1987 amendment in the Senate, two of the proposed legislative findings declared:

"(c) *IV drug users and prostitutes*, unlike other AIDS high-risk groups, are not easily reached educationally because they have no formal networking groups, no formal publications targeting them specifically, and in general are not in the mainstream of society that is reached by any form of media.

"(d) It is important that *IV drug users and prostitutes* be targeted specifically for AIDS information." (Italics added.)

As later amended, AB 2374 provided for the "establishment and funding of an AIDS education program in each county." It further required "persons convicted of certain criminal offenses to participate in the program," and for new fines imposed on a broad range of "persons convicted of specified crimes, including sex offenses, prostitution, intravenous use of a controlled substance, and retail sale and possession of hypodermic needles and sy-

ringes," to fund the county programs. (Aug. 4, 1988, Analysis of Assem. Bill No. 2374 by the Legis. Analyst.)

As noted in the comments to two amended reports prepared in early 1988 by the Senate Committee on the Judiciary, "[t]he purpose of this bill is to provide additional funds to counties to enable them to offer an AIDS education program for *persons who are using intravenous drugs and for those convicted of prostitution.*" (Italics added.) The same Senate Reports on the Judiciary described the types of offenses "affected": "[AB 2374] would authorize the court to fine persons convicted of the following crimes to fund an AIDS prevention education program: possession or use of specified controlled substances, unlawful sale or possession of hypodermic needles, rape, unlawful intercourse, spousal rape, sodomy, oral copulation, soliciting or engaging in any act of prostitution, or being under the influence of IV controlled substances in public." A May 26, 1988, amendment to the bill "broaden[ed] the definition of 'fine' in that it does not limit 'fine' to offenses involving intravenous use of a controlled substance."

In early August of 1988, the Department of Finance prepared a "local cost estimate." The department noted AB 2374 provided for the "AIDS Prevention Program . . ." to be "funded out of fines collected for offenses related to possession, use or being under the influence of specified controlled substances, possession, or sale of hypodermic needles or syringes, and various sex offenses. Pursuant to this bill, counties would be required to establish and provide an AIDS prevention education program, as specified, and any person convicted of or who pleads guilty to *prostitution or intravenous drug use* shall be required to participate in the program." (Italics added.) The report further noted "[t]he author's office estimates that approximately 39,000 persons may be eligible for participation in the AIDS education program proposed by this bill. . . . Since more persons are potentially subject to the fine than are potential program participants, and since the maximum amount of the fine [$70] is greater than the amount required to be deposited for program purposes, it is reasonable to project that program revenues will be equal to or greater than program costs."

Following what appears to have been a final August 26, 1988, amendment in the Senate, the "Comments" contained in a report entitled "Concurrence in Senate Amendments" noted:

"1) The purpose of [AB 2374] is to provide additional funds to counties to enable them to offer an AIDS education program *for persons who are using intravenous drugs and for those [convicted] of prostitution.* The author sees the fines the bill would authorize as 'user fees' for persons engaged in illegal activity which carries a high risk of AIDS infection.

"2) Persons convicted of *prostitution offenses and IV drug offenses* would be required to participate in the AIDS education program as a condition of probation or as part of a drug diversion program. . . ." (Italics added.)

When the bill passed the Senate, its author wrote the Governor in early September 1988, urging him to sign the bill. Assemblyman Statham stated the bill "requires convicted *IV drug users and prostitutes* to go through an education course on AIDS as a condition of receiving probation." (Italics added.) He continued: "In California, health experts agree that IV drug users are on the brink of [an] . . . explosion in terms of AIDS infection. It is vital that these people know what AIDS is, know how it is spread and know what they can do to stop it." The author noted, "Fines are increased $70 for a broad range of sex and IV drug crimes, . . ."

AB 2374 was filed on September 26, 1988, and is entitled "AIDS— EDUCATION PROGRAM—FINES," in chapter 1243 of the Statutes of 1988. Chapter 1243, section 1, sets forth the findings of the Legislature in reference to the enactment of section 1001.10 and its implementing statute, section 1001.11. These findings further pertain to the amendments and newly enacted statutes also found in chapter 1243 regarding discretionary fines to underwrite AIDS education that relate to persons convicted of the substantive offenses delineated in section 1001.10, subdivisions (b)(1) and (b)(2), and of certain sex offenses. (Stats. 1988, ch. 1243.)

Section 1 of the Statutes of 1988, chapter 1243 states as follows:

"The Legislature finds and declares all of the following:

"(a) Acquired immune deficiency syndrome (AIDS) and infection by human immunodeficiency virus (HIV), the etiologic agent for AIDS, has reached epidemic proportions in this state.

"(b) While *intravenous drug users* account for 2 percent of all AIDS cases diagnosed in California, studies in San Francisco indicate that 20 percent of *IV drug users* are infected with HIV.

"(c) In some eastern cities where infection with HIV has affected *IV drug users* early in the AIDS epidemic, the rate of infection among *IV drug users* is as high as 80 percent.

"(d) The greatest risk of transmission of HIV to heterosexuals is through *IV drug users.*

"(e) *Street prostitutes* are more likely to use *intravenous drugs* and, therefore, are at greater risk for exposure to HIV.

"(f) Education and counseling about the causes of AIDS and the prevention of HIV infection are crucial to halting the spread of the epidemic.

"(g) *IV drug users and prostitutes* are not easily reached with education and counseling because they have no formal network, no formal publications targeting them specifically, and in general are not in the mainstream of society that is reached by any form of media.

"(h) *It is critical that IV drug users and prostitutes be targeted specifically for AIDS education and counseling.*" (Italics added.)

## CONSTRUCTION

First, the legislative documents cited, *ante*, evidence no intent on the part of the author or the Legislature to limit required AIDS education for intravenous drug users to only those intravenous drug users convicted under section 647, subdivision (f). Throughout the legislative process, the targets of the proposed AIDS education were repeatedly cited as "IV drug users and prostitutes." In light of the foregoing, it would be illogical to conclude the phrase "if the offense involves intravenous use of a controlled substance" applied only to a conviction for disorderly conduct. Unmistakably, one of the principal targets of the legislation was intravenous drug users. " 'It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result' (2A Sutherland Statutory Construction (4th ed.) § 45.12, p. 37, . . ." (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 615 [194 Cal.Rptr. 294]; *Samarkand of Santa Barbara, Inc.* v. *County of Santa Barbara* (1963) 216 Cal.App.2d 341, 362 [31 Cal.Rptr. 151].)

Second, construing section 1001.10 as a whole and in reference to the other statutes added and amended as part of the same legislation (*People* v. *Medina* (1988) 206 Cal.App.3d 986, 991 [254 Cal.Rptr. 89]), section 1001.10, subdivision (a) mandates the court to require "any person" convicted under one of the statutes set out in subdivision (b)(1), "if the offense involves intravenous use of a controlled substance," or "any person" convicted of a violation of 647, subdivision (a) or (b) (prostitution-related violations) to agree to participate in an AIDS education program as a condition of admitting the person to probation, etc.

The legislative history demonstrates the author and the Legislature expected the consumers of the mandated AIDS education to be a smaller group than those susceptible to the additional discretionary "fine" that would fund the local county programs. Those persons convicted of any violation of the statutes specified in section 1001.10, subdivisions (b)(1) and (b)(2), as well as those persons convicted of certain sex crimes which carry a high risk of AIDS infection, were, in the words of the author, subject to a "user fee" as a result of engaging in certain high-risk activity. The "user fees" would underwrite the AIDS education program. Consistent with this resolve, sections 11377 and 11550 of the Health and Safety Code and sections 264, 286, and 288a were amended, and sections 4383 of the Business and Professions Code and section 647.1 of the Penal Code were added to their respective codes. These statutes provide for the imposition of a discretionary $70 fine, and were enacted as part of the same legislation in which sections 1001.10 and 1001.11 were added.

### DISCRETIONARY IMPOSITION OF CONDITION AS A TERM OF PROBATION

While appellant's conviction under subdivision (a) of Health and Safety Code section 11377 did not involve "intravenous use of a controlled substance," respondent argues and we agree that the trial court did not abuse its discretion by conditioning probation on appellant's participation in an AIDS education program. While participation was not mandated by section 1001.10 under the facts of this case, the order was eminently reasonable.

At the time of sentencing, the 32-year-old appellant, by her own admission, had been using illicit drugs since high school. She admitted to using both marijuana and methamphetamine following her arrest on the instant charges, but did not believe she was in need of substance abuse counseling. She had been purchasing and using methamphetamine by nasal ingestion for several months prior to her arrest. Appellant testified the 17.28 grams of white powder containing methamphetamine in her purse at the time of her arrest was for her personal use. An officer in the Stanislaus County Drug Enforcement Unit testified at the trial one could "mix a half gram [of methamphetamine] in coffee . . . eat it, drink it, snort it, inject it," etc.

While there may be no natural progression from nasal ingestion of methamphetamine to injecting it, it is an alternative method of sorption that might be readily available to appellant through her drug connection(s). One of the legislative findings accompanying section 1001.10 declared: "Education and counseling about the causes of AIDS and the prevention of HIV infection are crucial to halting the spread of the epidemic." (Stats. 1988, ch. 1243.) A

1988 report by the Senate Committee on Judiciary noted "[t]he AIDS prevention education program would, at a minimum, include details about the transmission of HIV, symptoms of AIDS or ARC, *prevention through avoidance or cleaning of needles*, . . ." (Italics added.) The same sentiment was reiterated verbatim in an analysis by the Senate Rules Committee shortly before AB 2374 was enacted.

In harmony with the cited legislative finding and legislative history is the AIDS education order of the lower court. It was a reasonable attempt to deter a woman who was not known to have used intravenous drugs but reasonably might be considered at risk of beginning such means of ingestion because of her long-term use of a drug capable of intravenous injection. Critical to a halt of the spread of the HIV virus is the education of people who have not begun using drugs intravenously regarding the risks intravenous use carries so they never start.

The condition of probation requiring AIDS education was well within the trial court's discretion (*People* v. *Bauer, supra,* 211 Cal.App.3d at pp. 940-941) and reasonable within the meaning of section 1203.1. (*People* v. *Lent, supra,* 15 Cal.3d at p. 486, citing *People* v. *Dominguez, supra,* 256 Cal.App.2d at p. 627.)

Finally, appellant notes the lower court simply ordered her to "[p]artici-pate in an AIDS education program pursuant to Penal Code Section 1001.10," without any showing it was exercising its discretion in so doing. The trial court's citation to "Section 1001.10" is equally consistent with an interpretation the court was merely referencing the provision establishing the AIDS education program as with an interpretation the court was under the erroneous impression it was required here to impose participation in an AIDS education program as a condition of probation.

There is nothing in the quoted statement to overcome the presumption the lower court regularly performed its official duty. (Evid. Code, § 664.) Evidence Code section 664 is a presumption affecting the burden of proof (Evid. Code, § 660); therefore, the burden is upon appellant to prove the trial court did not exercise its discretion (Evid. Code, § 606). No statement of reasons was required here and the lower court's mere silence as to whether or not it was engaging in an exercise of discretion is insufficient to sustain appellant's burden of proof. (*People* v. *Flower* (1976) 62 Cal.App.3d 904, 910 [133 Cal.Rptr. 455].)

The judgment is affirmed.

Vartabedian, J., and Thaxter, J., concurred.