[No. C028319. Third Dist. May 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY PATTERSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of FACTS and parts II, III and IV of the DISCUSSION.

## COUNSEL

Brian A. Wright, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, Stan Cross and Erik R. Brunkal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Health and Safety Code section 11379, subdivision (b)[1] makes it illegal to transport for sale specified controlled substances within this state from one county to another noncontiguous county.

In this case, defendant Jeffrey Patterson contends the statute contains a requirement that a defendant who transports such substances must intend *to facilitate their sale in the noncontiguous county.*

In the published portion of the opinion, we explain why we find no such requirement in the statute and reject defendant's contention.

A jury convicted defendant of nine drug-related offenses: count I, transportation of methamphetamine for sale between noncontiguous counties (§ 11379, subd. (b)); count II, possession of methamphetamine for sale (§ 11378); count III, possession of marijuana for sale (§ 11359); count IV, transportation of marijuana (§ 11360, subd. (a)); count V, possession of morphine sulfate tablets (§ 11350, subd. (a)); count VI, transportation and/or sale of morphine sulfate tablets (§ 11352, subd. (a)); count VII, possession of diazepam for sale (§ 11375, subd. (b)); count VIII, possession of drug paraphernalia (methamphetamine pipe), a misdemeanor (§ 11364); and count IX, possession of alprazolam tablets (Bus. & Prof. Code, § 4060). The jury also found as to counts I and II that defendant suffered two prior convictions for selling a controlled substance (§ 11352) within the meaning of section 11370.2, subdivision (a).

---

[1] All further undesignated statutory references are to the Health and Safety Code.

The trial court sentenced defendant to a total state prison term of fifteen years, consisting of nine years (the upper term) on count I with two 3-year consecutive enhancements under section 11370.2, subdivision (a); three years (the upper term) on count II with two 3-year consecutive enhancements under section 11370.2, subdivision (a), all run concurrent to count I; and all sentences on counts III-IX also concurrent to count I (three years on count III, four years on count IV, three years on count V, five years on count VI, three years on count VII, six months on count VIII, and six months on count IX).

Defendant contends: (1) His conviction on count I must be reversed because the trial court failed to instruct the jury that the offense described in section 11379, subdivision (b), requires transportation of methamphetamine to a noncontiguous county with the intent to facilitate the sale of the drug in that county. (2) There was insufficient evidence that he intended to sell methamphetamine in Modoc County. (3) The trial court erred by allowing the introduction of defendant's prior conviction to prove intent under Evidence Code section 1101, subdivision (b). (4) Defendant's sentences on counts II, III, and V (possessing methamphetamine for sale, possessing marijuana for sale, and possessing morphine sulfate) and the enhancements thereon should be stayed pursuant to Penal Code section 654. We agree only with defendant's last contention. Therefore we shall affirm the judgment of conviction on all counts, but direct the trial court to stay defendant's sentences on counts II, III, and V.

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

Section 11379, subdivision (b) (hereafter section 11379(b)) provides: "Notwithstanding the penalty provisions of subdivision (a) [two, three, or four years in state prison for the transportation of controlled substances, inter alia], any person who transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment in the state prison for three, six, or nine years." Methamphetamine is a controlled substance specified in section 11379, subdivision (a). (§ 11054, subd. (d)(1)-(7).)

*See footnote, *ante*, page 438.

Defendant contends: (1) the intent required by section 11379(b) is unclear on its face; (2) however, "logic would seem to dictate" that in enacting this provision the Legislature meant to penalize more harshly those who transport controlled substances *for the purpose of facilitating their sale in the noncontiguous county*, not just those who drive around while in possession of a saleable quantity of a controlled substance; (3) the legislative history of the statute bears out this interpretation; (4) therefore, the trial court should have instructed the jury on this required intent, and its failure to do so is prejudicial error.[2] We reject all of these contentions.

First, section 11379(b) is not ambiguous on its face. It unambiguously provides that the act of transporting a controlled substance for sale from one county to another noncontiguous county shall incur a greater punishment than the acts of transporting a controlled substance for sale within a single county or from one county to another contiguous county. The statute contains no language indicating a defendant must intend to facilitate the sale of the drugs in the noncontiguous county. ▇ "In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] . . . [¶] . . . [The] court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" (*People* v. *Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) ▇ Because the statute is unambiguous on its face, we need not resort to legislative history to construe it. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Pandazos* v. *Superior Court* (1997) 60 Cal.App.4th 324, 326 [70 Cal.Rptr.2d 669].)

Even assuming the statute is somehow ambiguous, and that legislative history might be useful in construing the statute, defendant offers no *cognizable* legislative history that supports his interpretation.

Defendant has requested judicial notice of the following items of legislative history: (1) all versions of Assembly Bill No. 1207 (1989-1990 Reg. Sess.), the legislation which gave rise to section 11379(b); (2) the procedural history of the bill from the 1989-1990 Assembly Final History; (3) an analysis of the bill prepared for the Assembly Committee on Public Safety; (4) material from that committee's file on the bill; (5) an analysis of the bill prepared for the Assembly Committee on Ways and Means; (6) a document

---

[2]The heading for this argument in defendant's opening brief is as follows: "MR. PATTERSON'S CONVICTION OF VIOLATING SECTION 11379, SUBDIVISION (b), SHOULD BE REVERSED BECAUSE THE COURT FAILED TO INSTRUCT THE JURY THAT THE TRANSPORTATION OF THE METHAMPHETAMINE HAD TO BE WITH THE INTENT TO FACILITATE THE SALE OF THE METHAMPHETAMINE IN THE NONCONTIGUOUS COUNTY."

related to the bill from the file of that committee; (7) the third reading analysis of the bill prepared by the Office of the Assembly Floor Analyses; (8) material on the bill from the file of the Assembly Republican Caucus; (9) an analysis of the bill prepared for the Senate Committee on the Judiciary; (10) material on the bill from that committee's file; (11) a fiscal summary of the bill prepared by the Senate Committee on Appropriations; (12) material on the bill from that committee's file; (13) two analyses of the bill prepared by the Legislative Analyst; (14) a third reading analysis of the bill prepared by the Office of Senate Floor Analyses; (15) material on the bill from the file of that office; (16) a concurrence in the Senate Amendments analysis of the bill prepared by the Office of the Assembly Floor Analyses; (17) material on the bill from the file of Assembly Member Lloyd Connelly, the bill's author; (18) postenrollment documents regarding the bill; (19) the final report of the State Task Force on Gangs and Drugs, dated January 1989.

We grant the request only as to items 1, 2, 3, 5, 7, 9, 11, 13, 16, and 19 because only those items are legitimate indicia of legislative intent. (Evid. Code, §§ 452, subd. (b), 459, subd. (a); *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326] [reports of legislative committees]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300 [250 Cal.Rptr. 116, 758 P.2d 58] [Legislative Analyst's report].) The remaining materials merely reflect the views of individual legislators, staffers, or other interested persons. None of these, not even the statements of the bill's author about its intended purpose, reveal the collegial intent of the Legislature in enacting the bill. ▮ As Division Two of the Fourth District said recently, "When construing a statute, our task is to ascertain the intent of the Legislature as a whole. (*Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) Generally, the motive or understanding of an individual legislator is not properly received as evidence of that collective intent, even if that legislator was the author of the bill in question. (*Ibid.*) Unless an individual legislator's opinions regarding the purpose or meaning of the legislation were expressed in testimony or argument to either a house of the Legislature or one of its committees, there is no assurance that the rest of the Legislature even knew of, much less shared, those views. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].) Moreover, if a legislator's views were never expressed in a legislative forum, those legislators or other interested parties with differing opinions as to the bill's meaning and scope had no opportunity to present their views in rebuttal. (*Id.*, at p. 701.)

"If the views of particular legislators are not admissible for this purpose, then letters written to those legislators in the attempt to influence those

views must also be disregarded. (*Quintano* v. *Mercury Casualty Co., supra,* 11 Cal.4th at p. 1062, fn. 5.)

■ "For similar reasons, the analyses or opinions of particular offices within the *executive* branch should not be considered in determining the intent of the *legislative* branch. Legislative staff analyses are considered only because '. . . it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it.' (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) By contrast, it is not reasonable to infer that enrolled bill reports prepared by the executive branch for the Governor were ever read by the Legislature." (*McDowell* v. *Watson* (1997) 59 Cal.App.4th 1155, 1161-1162, fn. 3 [69 Cal.Rptr.2d 692].)

Defendant cites *Commodore Home Systems, Inc.* v. *Superior Court* (1992) 32 Cal.3d 211, 218 [185 Cal.Rptr. 270, 649 P.2d 912], footnote 9, for the proposition that we may judicially notice the files of a bill's author. The fact that the court did so in that case on request of one party, without opposition from the other (*ibid.*), does not mean that such files are generally subject to judicial notice as indicia of legislative intent. (See *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 122 [253 Cal.Rptr. 1, 763 P.2d 852] [legislative materials not expressing collegial view of Legislature significant "insofar as their contents do not contradict the plain language of the statute"].) Here, defendant seeks judicial notice of such materials to show a purported legislative intent at odds with the plain language of the statute: to require an intent not spelled out in the statute itself. These materials are not cognizable for that purpose.

Defendant cites *People* v. *Henson* (1991) 231 Cal.App.3d 172, 179 [282 Cal.Rptr. 222], for the proposition that a letter to the Governor by the bill's author is a valid index of legislative intent. However, in *Henson* the quoted letter by the bill's author merely reiterated statements of the bill's intent already contained in legislative committee reports and a report concurring in Senate amendments to the bill. (*Id.* at pp. 178-179.) *Henson* does not hold that a statement by the bill's author in a letter, without more, reveals legislative intent.

■ To support his claim that the Legislature intended to incorporate an intent into section 11379(b) that does not appear in the plain language of the statute, defendant improperly relies mainly on items of legislative history which do not reveal the collegial intent of the Legislature, in particular a letter and a press release by the bill's author and private communications by

a legislative staffer. The items which we have judicially noticed as proper indicia of legislative intent show no such purpose. We conclude the properly cognizable legislative history does not support defendant's interpretation of the statute.

Finally, defendant contends that "logic" requires us to interpret the statute as he urges. Once again, we are mindful that, in the absence of an absurdity (which is not present here), the "logic" of a statute is to be gleaned primarily from its language; in the absence of ambiguity, no judicial construction is warranted. (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].)

In any event we fail to see the "logic" in defendant's position. Defendant's construction of the statute would place an onerous burden upon law enforcement to identify the county in which a defendant who is transporting illegal drugs intends to sell them. It would also mean that the statute would not apply to a defendant who transports illegal drugs on Interstate 5 from Sacramento, with the intent to sell them in Shasta County, and who is arrested in Colusa County. We cannot believe the Legislature intended such a result. We find no merit in defendant's argument.

Since section 11379(b) does not require the intent proposed by defendant, the trial court correctly did not instruct the jury thereon. Defendant has shown no error.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Defendant's convictions and sentences are affirmed, except that the sentences imposed on counts II, III, and V, are hereby stayed pursuant to Penal Code section 654. The trial court shall furnish a certified copy of a corrected abstract of judgment to the Department of Corrections.

Davis, J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 15, 1999.

---

*See footnote, *ante*, page 438.