Filed 8/27/13  P. v. Vasquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERNEST VASQUEZ,<br><br>    Defendant and Appellant. | F063298<br><br>(Super. Ct. No. F10100482)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James Petrucelli, Judge.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Ernest Vasquez stands convicted, following a jury trial, of resisting a peace officer and proximately causing serious bodily injury (Pen. Code,[1] § 148.10; count 1) and resisting an executive officer (§ 69; counts 2 & 3).  He admitted having suffered five prior "strike" convictions.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  Sentenced to 50 years to life in prison and ordered to pay various fees, fines, and assessments, he now claims the trial court committed various errors that require resentencing.  We affirm.

## FACTS

Sworn, uniformed peace officers are on duty at Coalinga State Hospital.  About 3:40 p.m. on July 11, 2010, Officers Ibarra and Luna saw defendant, a civil detainee at the hospital, vandalizing window tint.  Directed by their sergeant to stop defendant, whom there was probable cause to arrest, Ibarra and Luna walked toward defendant.  Upon seeing them, defendant went upstairs into his assigned housing unit.

Ibarra, Luna, and Officer Diaz went upstairs and contacted Julio Lopez, a psychiatric technician who was in charge of the housing unit that shift.  Ibarra discovered defendant about 10 or 11 feet away, walking toward them.  He had a brown bag tucked underneath his right arm.  Ibarra made eye contact with defendant and said he needed to talk to him.  Defendant replied that he did not want to talk to Ibarra.  Ibarra insisted, but defendant continued to refuse.  Defendant walked past Ibarra, who told him, "Vasquez, you need to stop, you are detained."  Defendant said no, he did not want to talk, and continued to walk away.

Ibarra continued to tell defendant to stop, that he was detained and not free to go, but defendant continued to insist that he did not want to talk.  Lopez tried to explain the officers just wanted to talk to defendant, but defendant did not respond.  Instead, he told

---

**1**     All statutory references are to the Penal Code unless otherwise stated.

the officers, "not right now, I got to leave, I got to go somewhere."[2]  Defendant then fled from Ibarra, who gave chase.

Defendant was able to reach the housing unit exit door; he had one hand on the door handle when Ibarra grabbed his hand and told him to stop.  Defendant punched Ibarra on the left side of the chin with a closed fist, then punched him two more times in the chest.[3]  Ibarra was trying to take him down and handcuff him; defendant resisted, and they struggled.  Luna caught one of defendant's arms and Diaz caught the other.  Defendant lunged forward toward Ibarra, whereupon Luna conducted a "front leg sweep" in order to put defendant on the floor so officers could gain better control of him.

When Luna executed the leg sweep, everyone fell to the floor.  Luna jammed his shoulder, an injury that necessitated physical therapy.  Defendant fell on top of Ibarra, causing a closed comminuted fracture dislocation of Ibarra's ankle that required surgical repair.  It took Diaz and Luna both to handcuff defendant.

## DISCUSSION

## I

## DENIAL OF MOTION TO RECONSIDER DENIAL OF MOTION TO CONTINUE SENTENCING

Defendant contends the trial court abused its discretion when it denied his motion to reconsider its denial of his motion to continue sentencing.  Defendant says the error violated state law, as well as his federal constitutional rights to due process and the effective assistance of counsel.

---

[2]  Civil detainees are not permitted to leave the hospital grounds.  While they have civil rights and are not required to speak with a police officer if they do not want to do so, they are required to follow an officer's lawful orders.

[3]  Ramiro Madera, a civil detainee who witnessed the incident, denied that defendant struck anyone.  Thomas Hovanski, another civil detainee, saw the officers pulling on defendant while defendant was holding onto the door frame.  When defendant let go of the door frame, his arm came forward like a punch, although Hovanski did not think it was actually a punch.

## A.    <u>Background</u>

The jury returned its verdicts on May 18, 2011, and sentencing was set for June 16.[4] On June 16, defense counsel made an oral motion to continue sentencing. The matter having been discussed in chambers, defense counsel stated on the record that he had "come into some information" he thought would be "a mitigating factor in sentencing" and that required an expert to develop. Sentencing was continued to July 21 over the prosecutor's objection.

On July 19, defense counsel filed a written motion to continue. In his supporting declaration, counsel stated he had evidence defendant suffered from one or more mental defects or disorders, which could have a mitigating effect at sentencing; he had identified a qualified expert willing to examine defendant, prepare a report, and potentially testify regarding defendant's condition; counsel had not yet received county approval for funds for said expert; and more time was needed to procure funding and allow the expert to complete his work.

At the July 21 hearing, defense counsel stated it had taken him a while to identify an expert due to "a number of factors, schedules, availability, and also perhaps my not being as aggressive as I could have been early on .…" Counsel stated he had now identified the expert, was in the process of getting everything he needed to obtain court approval for the expert's fee and hoped to file a motion for funds the next morning, and needed "a little more time" to have the expert evaluate defendant. The People strongly opposed any further continuance. The prosecutor pointed out the problem of jail overcrowding, and noted it had been over eight weeks since defendant, who had five strikes, was convicted. The prosecutor argued there was no good cause shown for a continuance: Defense counsel had been dilatory, it would take a lot more time to do what purportedly needed to be done, and even if something in mitigation could be shown, it

---

[4]    Unspecified dates are to the year 2011.

would be "highly inappropriate" for the court to dismiss five prior strikes. Defense counsel responded that what was at issue was the appropriate sentence for the current incident, which involved crimes that could have been charged as misdemeanors. He argued defendant's mental state was relevant, asserted it was in the interest of justice for the court to have the pertinent information before imposing sentence, and suggested it would not cause a great burden on the county or public to have another continuance of four weeks "or so."

After further argument, the court observed it had already granted one continuance over the prosecutor's objection, but that "not very much, if anything, was done during that continuance." The court believed it would be impossible, in four to five weeks, for defense counsel to get everything done that counsel said he needed to do, and found it an "inordinate amount of time to delay a sentencing" in light of what little had been accomplished. Accordingly, it found it inappropriate to continue the case again, and so denied the motion.

Defense counsel requested five days in which to file a motion for reconsideration. He represented that he had made several phone calls and contacts to identify the expert, and had had conversations and shared information with that person. While questioning what defense counsel could bring before the court that would change the history and status of the case and the issues in aggravation and mitigation the court had already considered, the court nevertheless granted the request.

The motion for reconsideration was filed on July 25. In his supporting declaration, counsel stated he had specific medical evidence indicating defendant suffered from one or more mental defects or disorders, and believed this evidence would have a mitigating effect at sentencing. Counsel declared that the first expert he attempted to retain for the purpose of preparing a report was not available, but he had since identified a qualified expert, Dr. Richard Blak, who was willing to examine defendant, prepare a report, and potentially testify regarding defendant's condition. Counsel stated

the application seeking county approval for funds for the expert should be filed no later than the morning of July 26; he had already begun the process of procuring the records the expert sought; and a reasonable continuance, which would not prejudice the People, was needed to obtain funding and allow the expert to complete his work.

Defense counsel also submitted a declaration from Blak, a licensed psychologist who had maintained a private practice in Fresno since 1982, was on the Merced Superior Court Psychiatric Panel, and had evaluated inmates/patients at both prisons and state hospitals. In the declaration, Blak stated defense counsel had provided him with a 2002 neuropsychological evaluation of defendant. Dr. Mathiesen, who conducted the evaluation, opined that defendant suffered from "various psychological dysfunction," including the beginning stages of dementia. Blak stated that to assist defense counsel, a thorough examination of the record would be necessary. This would include the C-file and Unit Health Record data from the California Department of Corrections and Rehabilitation (CDCR), as well as medical and psychiatric records from Coalinga State Hospital. In addition, an updated intellectual assessment should be conducted to determine current intellectual/cognitive functioning. Blak stated that relevant history and current functioning needed to be reviewed; in addition, "dynamics of the interaction" between the officers and defendant at the time of the incident would be important "relative to [defendant's] capacity to appreciate directives from them." Blak anticipated a minimum of 10 hours of his professional service would be required.

The motion for reconsideration was heard on July 29. Defense counsel related that Blak could conduct an evaluation and examination of defendant without having defendant's records, although counsel was hopeful he could obtain them from defendant's attorney in the Santa Clara County Public Defender's Office. Defense counsel and that attorney both had been in trial, but were planning on conferring that day. Counsel argued the gravity of the potential sentence, coupled with offenses the court presiding over the preliminary hearing said constituted misdemeanor behavior with

felony injuries — injuries that were not caused intentionally by defendant — rendered reasonable an additional three-week continuance to allow Blak to perform an evaluation.

Blak, who was present at the hearing, testified he was first contacted by defense counsel around July 20; the two first spoke face to face earlier the morning of the hearing; and they had had approximately five telephone conversations between July 20 and the time of the hearing. Blak further testified he was provided with Mathiesen's evaluation on or about July 20, but had not been given any other material by defense counsel. Blak was scheduled to be on vacation and out of state from the Wednesday following the hearing until August 8, and the soonest he would be able to meet with defendant to evaluate him would be two or three days following Blak's return to his office on August 9, because he would need time to schedule the appointment with the jail. Blak estimated it would then take him three days to write a report concerning defendant's mental condition. If Blak had the medical records from defendant's CDCR file prior to seeing defendant, he did not anticipate a change in this timeframe; however, a delay in getting the records could require additional time. Blak believed that even if he did not receive the records in a timely manner, he would be able to do an examination and evaluation that would be beneficial to the court. The 2002 evaluation pointed to a diagnosis of "mild mental retardation versus lifetime cognitive deficits versus dementia," and Blak believed he could utilize an intellectual assessment that was developed after, and would be more accurate than, Mathiesen's 2002 report. Blak also planned to conduct a brief neuropsychological screen to determine evidence of organicity or brain damage, since the history in Mathiesen's report showed head trauma and loss of consciousness and coma that were typically related to residual brain impairment. Blak represented he could determine those things without the CDCR record, although "[p]referably [he] would certainly want" the records from Coalinga State Hospital.

The prosecutor argued the defense still had not acted diligently, and also questioned the likelihood a report not yet written would result in evidence of mitigation

7.

that would change the statutory sentence of 25 years to life. In response, defense counsel maintained he had indeed been diligent; he was referred to Blak by another medical professional who, after the exchange of multiple messages, turned out to be unavailable, and he first had contact with Blak on July 19, after leaving messages for him before that. Defense counsel pointed out that a sentence of 25 years to life was not a decision that had yet been made, and, given its gravity, another three weeks was reasonable and could be set to four weeks out of an abundance of caution.

The trial court stated: "Well, first of all, according to Dr. Blak, I think your three-week request is inappropriate. It's not going to be done, and then you're going to be back here asking for another, a third continuance." The court also questioned why the fee request was not attached to the motion for reconsideration. When defense counsel stated he could have it filed before noon, the court pointed out defense counsel had stated he was going to have it filed the last time this case was before the court. Defense counsel explained he did not believe in wasting the court's time and so had not wanted to present what would be a moot request if the court did not grant the motion to reconsider the continuance.

The court stated it had considered all of the facts and testimony and previous continuances. It noted defendant was found guilty on May 18, and it was now almost August. It denied the motion for reconsideration and proceeded to impose sentence.

## B. Analysis

"Continuances shall be granted only upon a showing of good cause." (§ 1050, subd. (e).)[5] "A 'trial court has broad discretion to determine whether good cause exists to

---

[5]    In his written motion seeking reconsideration, defense counsel addressed the requirements of Code of Civil Procedure section 1008. We need not decide whether that statute applies in criminal cases, since the trial court had inherent power to reconsider its denial of the continuance motion in any event. (See *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246-1249.) Accordingly, as do the parties, we address the true issue: whether the trial court properly refused to grant defendant a second continuance.

grant a continuance of the trial.  [Citation.]  A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence.'  [Citation.]  Such discretion 'may not be exercised so as to deprive the defendant or his attorney of a *reasonable opportunity* to prepare.'  [Citation.]  'To effectuate the constitutional rights to counsel and to due process of law, an accused must … have a *reasonable opportunity* to prepare a defense and respond to the charges.'  [Citation.]"  (*People v. Roldan* (2005) 35 Cal.4th 646, 670, italics added, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  The same principles apply to motions to continue sentencing hearings.  (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 70, 77.)

> "[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court.  [Citations.]  The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked.  [Citation.]
>
> "Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered.  [Citations.]  Moreover, the denial of a continuance may be so arbitrary as to deny due process.  [Citation.]  However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence.  [Citation.]  Although 'a myopic insistence upon expeditiousness in the face of a *justifiable* request for delay can render the right to defend with counsel an empty formality[,] … [t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.'  [Citation.]  Instead, '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'  [Citations.]"  (*People v. Beames* (2007) 40 Cal.4th 907, 920-921, italics added; see also *Morris v. Slappy* (1983) 461 U.S. 1, 11-12; *Ungar v. Sarafite* (1964) 376 U.S. 575, 589-590; *People v. Frye* (1998) 18 Cal.4th 894, 1012-1013, disapproved on another ground in *People v. Doolin, supra,* 45 Cal.4th at p. 421, fn. 22.)

Absent a showing of an abuse of discretion and prejudice to the defendant, denial of a motion to continue does not warrant reversal.  (*People v. Doolin, supra,* 45 Cal.4th at

p. 450; *People v. Barnett* (1998) 17 Cal.4th 1044, 1126.) As defendant has failed to establish an abuse of discretion, we need not address prejudice.

First, the record does not show diligence on the part of defense counsel. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1037; *People v. Howard* (1992) 1 Cal.4th 1132, 1171; *United States v. Flynt* (9th Cir. 1985) 756 F.2d 1352, 1359, opn. mod. 764 F.2d 675, 675.) The jury returned its verdicts on May 18. Sentencing was originally set for June 16, by which time defense counsel had obtained some information — presumably about defendant's purported mental deficiencies — he felt might be mitigating. Defense counsel never explained why he did not obtain the information earlier. More importantly, after he was granted a continuance of more than a month, he did virtually nothing until two days before sentence was scheduled to be imposed, at which time he merely contacted Blak and filed another motion for continuance. Counsel never satisfactorily explained why it took over four weeks to make contact with his first potential expert, determine he or she would be unavailable, and then contact Blak. In fact, counsel even admitted he failed to act as "aggressive[ly]" as he might have.

Next, the trial court reasonably could have concluded a continuance would not be useful. (See *People v. Beeler* (1995) 9 Cal.4th 953, 1003, abrogated on another ground as stated in *People v. Pearson* (2013) 56 Cal.4th 393, 462; *United States v. Flynt, supra,* 756 F.2d at p. 1359.) "[T]o demonstrate the usefulness of a continuance a party must show both the materiality of the evidence necessitating the continuance and that such evidence could be obtained within a reasonable time." (*People v. Beeler*, *supra*, at p. 1003.) The trial court here was understandably skeptical of whether everything that needed to be done could be accomplished in another three to four weeks, when Blak had a vacation

scheduled, records he found it preferable to have had not been obtained, and defense counsel had not yet even sought authorization for Blak to be paid for his services.[6]

Moreover, the trial court reasonably could have concluded defense counsel was significantly overstating the benefit defendant could anticipate if a continuance were granted. It is true that a mitigating factor may be found if "[t]he defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime." (Cal. Rules of Court, rule 4.423(b)(2).) A finding that a defendant's mental condition contributed to the offense does not, however, automatically result in a conclusion the defendant's culpability was "'significantly reduced'" thereby. (See *People v. Regalado* (1980) 108 Cal.App.3d 531, 538-539.) In light of defendant's 40-year known history of criminal activity (his juvenile record apparently having been lost or destroyed), his five prior strike convictions, and the fact defendant's conduct proximately caused injury to two peace officers, the trial court did not err by questioning what defense counsel could present that could change the information already before it. (See *id*. at p. 539 [since individual sentencing criteria have no fixed mathematical values, court can decide mitigating influence, if any, is small].)

We recognize that sentencing is a critical stage of the prosecution. (*People v. Trapps* (1984) 158 Cal.App.3d 265, 272.) Nevertheless, "'[b]road discretion must be

---

**6** Whether such payment was likely to be approved raises another question. In *People v. Stuckey* (2009) 175 Cal.App.4th 898, 905, the appellate court stated: "Evidence Code section 730 does not authorize the appointment of experts after trial in connection with sentencing proceedings [in noncapital cases]. Nor do the federal and state Constitutions entitle an indigent criminal defendant to improve his chances of a favorable sentencing choice by having experts echo the arguments of defense counsel. Although appointment of experts may be required when a defendant shows that they are necessary to formulate an affirmative defense to criminal charges or to rebut an expert witness retained by the prosecution to render an expert opinion at sentencing, a defendant may not require the trial court to appoint experts at public expense merely to supplement the arguments of counsel at sentencing." Because defense counsel never formally sought approval for Blak's expert services, we cannot determine whether *Stuckey* applies.

11.

granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel'" (*People v. Alexander* (2010) 49 Cal.4th 846, 934) or to due process (*Ungar v. Sarafite, supra,* 376 U.S. at p. 589). Considering the circumstances of the present case, defense counsel's lack of diligence, and the reasons presented for the request for a continuance (*People v. Frye, supra,* 18 Cal.4th at p. 1013), we conclude the trial court did not abuse its discretion by refusing to grant defendant more time.

## II

### ALTERNATIVE CLAIMS OF SENTENCING ERROR

Defendant says that if we conclude the trial court did not abuse its discretion by denying the request for a continuance, the case must nevertheless be remanded for resentencing because (1) defense counsel's representation was deficient, (2) the trial court abused its discretion by denying defendant's motion to reduce the offenses to misdemeanors, and (3) the trial court abused its discretion by refusing to dismiss defendant's prior strike convictions.

### A.    The Sentencing Hearing

The probation officer's report (RPO) recommended imposition of three consecutive terms of 25 years to life. At sentencing, defense counsel orally asked the court to dismiss defendant's prior strike convictions. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) Defense counsel argued the most recent strike was remote; defendant had remained out of trouble for a long time and, except for the present incident, had been trouble-free at the state hospital; the circumstances of the present offenses were such that what happened was as much the fault of the officers as of defendant; defendant did not intentionally injure anyone; and, as Blak testified, defendant suffered from one or more mental defects, deficiencies, or disorders. For the same reasons, particularly the circumstances of the current crimes, counsel further asked the

12.

court to reduce the present offenses to misdemeanors pursuant to section 17. In light of defendant's lengthy criminal history and the severity of the injury suffered by Ibarra, the People opposed both requests. Because Ibarra was the victim in two of three counts, however, the People requested imposition of two consecutive terms of 25 years to life, with a third such term to be served concurrently.

The trial court expressly denied the request to reduce the offenses to misdemeanors and implicitly declined to dismiss the prior strike convictions, finding defendant had "clearly demonstrated his threat to the safety of the community and those within his vicinity." The court then sentenced defendant to prison for three consecutive terms of 25 years to life. It subsequently resentenced defendant to consecutive terms of 25 years to life on counts 1 and 3, and imposed but stayed, pursuant to section 654, a term of 25 years to life on count 2.

## B.     Ineffective Assistance of Counsel

Defendant says that if defense counsel was not diligent in timely finding an expert to evaluate defendant for the sentencing hearing, or he was diligent but failed to provide the court with sufficient information of his diligence to justify the need for a second continuance, then the case must be remanded for resentencing due to ineffective assistance of counsel. The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.]  'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  [Citations.]" (*People v.*

13.

*Cunningham* (2001) 25 Cal.4th 926, 1003; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687-694.)

We need not decide whether defense counsel's performance was deficient, because defendant has failed to "'carry his burden of proving prejudice as a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel.' [Citation.]" (*People v. McPeters* (1992) 2 Cal.4th 1148, 1177, superseded by statute on another point as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106-1107, 1116; see *Strickland v. Washington, supra,* 466 U.S. at p. 697.) At the time it imposed sentence, the trial court had before it some evidence, through Blak's testimony (which was specifically referenced by defense counsel), of defendant's mental disorders or deficiencies. It also had before it, through the RPO, a catalog of defendant's extensive 40-year criminal history, as well as information he was twice committed to a state mental hospital as a mentally disordered sex offender (former Welf. & Inst. Code, § 6316). On this record, it would be wholly speculative to conclude Blak might have furnished information to the court that could have had a mitigating effect on defendant's sentence. (See *In re Thomas* (2006) 37 Cal.4th 1249, 1265.)

**C.     <u>Reduction of Current Offenses to Misdemeanors</u>**

Defendant says the trial court abused its discretion when it denied his motion to reduce the current offenses — or at least count 3, in which Luna was the victim — to misdemeanors. He contends the trial court failed to engage in a "reasoned consideration" of the factors relevant to such a decision.

Because sections 69 and 148.10 are both "wobblers," the trial court had "broad authority" to reduce defendant's current offenses to misdemeanors pursuant to section 17, subdivision (b) (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1457), despite the fact defendant had prior strike convictions (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 973 (*Alvarez*)). Although defendant's recidivist status was "undeniably relevant," it was not "singularly dispositive." (*Ibid*.)

14.

We review a trial court's decision under section 17, subdivision (b), for abuse of discretion. (See *Alvarez*, *supra*, 14 Cal.4th at p. 977.) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) As the California Supreme Court explained in *Alvarez*:

> "On appeal, two additional precepts operate: 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]

> "We find scant judicial authority explicating any criteria that inform the exercise of section 17[, subdivision] (b) discretion. [Citation.] However, since all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.]410.[7] The corollary is that even under the broad authority conferred by section 17[, subdivision] (b), a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.' [Citations.]" (*Alvarez*, *supra*, 14 Cal.4th at pp. 977-978, fn. omitted.)

Specifically with respect to the exercise of section 17, subdivision (b) discretion in a case involving the "Three Strikes" law, *Alvarez* stated that a "necessary concomitant" of a trial court's authority to reduce an offense to a misdemeanor despite the presence of strike convictions "is the discretion to weight the various sentencing considerations

---

**7** All references to rules are to the California Rules of Court.

commensurate with the individual circumstances. [Citations.] For that reason, the fact a wobbler offense originated as a three strikes filing will not invariably or inevitably militate against reducing the charge to a misdemeanor. Nonetheless, the current offense cannot be considered in a vacuum; given the public safety considerations underlying the three strikes law, the record should reflect a thoughtful and conscientious assessment of all relevant factors including the defendant's criminal history. [Citation.] Furthermore, in evaluating the severity of a three strikes sentence relative to the gravity of the charge, the court must remain cognizant that the present violation of law only *triggers* the mandated penalty, which ultimately is the consequence of both that offense and the defendant's recidivist status. [Citation.]" (*Alvarez*, *supra*, 14 Cal.4th at pp. 979-980.)

Defendant lists seven factors to which he claims the trial court failed to give the requisite "'reasoned consideration.'" All were before that court in one form or another, however. Nothing in *Alvarez* changes the basic presumption that a trial court has regularly performed its duty (Evid. Code, § 664), and that it is deemed to have considered relevant sentencing criteria unless the record affirmatively reflects otherwise (rule 4.409). That the court did not reach the decision defendant desired does not mean it did not adequately consider the circumstances informing its decision. (See, e.g., *People v. Henson* (1991) 231 Cal.App.3d 172, 182; *People v. Cruz* (1960) 178 Cal.App.2d 83, 87.)

The information before the trial court showed Officers Ibarra and Luna both were injured as a result of defendant's disobedience of Ibarra's lawful orders. Although it does not appear defendant intended either of them to be hurt, he was, nevertheless, the proximate cause of their injuries. Ibarra's injury was sufficiently serious that there were multiple segments associated with the fracture of his ankle, one of the major ligaments between the ankle bones was separated, plates and screws had to be surgically implanted to keep the bones together and hold them in proper position, he was on crutches for close to four months, and, according to the surgeon, in some respects healing was still occurring at the time of trial. In addition, defendant had a history of violence dating back

16.

to 1973 that included assault on a peace officer, robbery, forcible rape, possession of a weapon by a prisoner, and assault with intent to commit rape.

"As a general matter, the court's exercise of discretion under section 17[, subdivision] (b) contemplates the imposition of misdemeanor punishment for a wobbler 'in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon.' [Citation.]" (*People v. Park* (2013) 56 Cal.4th 782, 790.) Under the circumstances here, defendant has failed to show the trial court exceeded the bounds of reason by refusing to reduce any of the current offenses to misdemeanors.

## D.     Dismissal of Prior Strike Convictions

Based on the same seven factors, defendant contends the trial court abused its discretion by failing to dismiss defendant's prior strike convictions. Once again, the trial court is presumed to have considered those factors (*People v. Pearson* (2008) 165 Cal.App.4th 740, 749); defendant bears the burden of clearly showing the trial court's decision was arbitrary or irrational; absent such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives; and the trial court's decision will not be reversed merely because reasonable people might disagree (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377). In the three strikes context, "these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

In deciding whether to dismiss or vacate a prior strike conviction or in reviewing such a ruling, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

17.

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances.  For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation].  Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce [] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case.  [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.…  Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.  Of course, in such an extraordinary case — where the relevant factors … manifestly support the striking of a prior conviction and no reasonable minds could differ — the failure to strike would constitute an abuse of discretion." (*People v. Carmony, supra,* 33 Cal.4th at p. 378.)

This is not such an extraordinary case.  Defendant was 59 years old at the time of sentencing.  His known criminal record dated back to 1970.  He had five prior strike convictions that included violent sex offenses.  His most recent prior convictions were for committing lewd and lascivious acts on children under the age of 14.  Although those convictions occurred in 1993, he was not paroled from prison until 2001, and was committed to a state mental hospital as a mentally disordered sex offender within a matter of months.  As shown by the RPO, he has not remained out of custody or civil detainment and offense free for any appreciable period of time in over 40 years.  Under the circumstances, he is precisely "'the kind of revolving-door career criminal for whom the Three Strikes law was devised.'" (*People v. Strong* (2001) 87 Cal.App.4th 328, 340, fn. omitted.)

The trial court did not abuse its discretion in implicitly reaching this conclusion. (See, e.g., *In re Large* (2007) 41 Cal.4th 538, 552; *People v. Pearson*, *supra*, 165

18.

Cal.App.4th at p. 749; *People v. Strong, supra,* 87 Cal.App.4th at pp. 338-340 & cases cited.) That striking one or more prior convictions as to one count may conceivably have constituted a proper exercise of discretion (see, e.g., *People v. Garcia* (1999) 20 Cal.4th 490, 502-503; *People v. Bishop* (1997) 56 Cal.App.4th 1245, 1250-1251) does not mean any other course of action constituted an abuse of discretion.

## DISPOSITION

The judgment is affirmed.


_____
DETJEN, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
KANE, J.