Filed 6/2/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B296331 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA134487) |
| v. | |
| ANTHONY  LYLE TARKINGTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Susan Sullivan Pithey, Assistant Attorneys General, Paul M. Roadarmel Jr., Stacy S. Schwartz, Idan Ivri, and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Jackie Lacey, Los Angeles County District Attorney, Phyllis C. Asayama and Matthew Brown, Deputy District Attorneys; Ricardo D. Garcia, Public Defender of Los Angeles County, Albert J. Menaster, Deputy Public Defender; Erika C. Anzoategui,

Alternate Public Defender of Los Angeles County, Michael Goodman, Deputy Alternate Public Defender; The Justice Collaborative, Kate L. Chatfield, Senior Advisor for Legislation and Policy, as Amici Curiae.

---

In 1997, defendant and appellant Anthony Lyle Tarkington was convicted by a jury of second degree murder, with a finding that he personally used a dangerous and deadly weapon, a knife. After passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Tarkington petitioned for resentencing under Penal Code section 1170.95.[1]  The trial court summarily denied the petition because Tarkington was the actual killer. Tarkington contends that the court's order must be reversed because the court improperly denied his petition without appointing counsel.  We disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On June 22, 1996, Tarkington and the victim, Donald Fitzpatrick, became embroiled in a fistfight as they were waiting in line for free coffee and donuts in downtown Los Angeles. Tarkington fatally stabbed Fitzpatrick in the shoulder and the stomach.  Consequently, Tarkington was charged with murder.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     We glean the facts from our unpublished opinion in Tarkington's direct appeal in case No. B117520, filed August 19, 1998, of which we have taken judicial notice at Tarkington's request.  (Evid. Code, §§ 452, subd. (d), 459.)

On August 25, 1997, a jury found Tarkington guilty of second degree murder. (§ 187, subd. (a).) It also found true the allegation that he personally used a deadly and dangerous weapon, a knife, in commission of the murder. (§ 12022, subd. (b).) Pursuant to the Three Strikes law (§ 667, subds. (b)–(i)), the trial court sentenced Tarkington to 46 years to life in prison.

On January 28, 2019, after passage of Senate Bill 1437, Tarkington filed a petition for resentencing under section 1170.95. Using a preprinted form, he checked boxes stating that a charging document had been filed against him allowing the prosecution to proceed under a felony murder theory or the natural and probable consequences doctrine; he was convicted of first or second degree murder under one of those theories; he could not now be convicted of murder in light of changes to the law wrought by Senate Bill 1437; he was not the actual killer, nor did he aid and abet the actual killer with the intent to kill; and he was not a major participant in the felony and did not act with reckless indifference to human life. He also checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process."

On February 13, 2019, the trial court summarily denied the petition. Tarkington was not present and the court did not appoint counsel for him. The court's order stated, "In 1997, Tarkington was convicted of second degree murder for stabbing a man to death on June 22, 1996. The victim was waiting [in] line for free donuts and coffee in the Skid Row area of Los Angeles. Tarkington was convicted in part when DNA confirmed a spot of blood on his shoe was the victim's. [¶] As the actual killer,

Tarkington is not entitled to relief under Penal Code § 1170.95. [¶] The petition for resentencing is unmeritorious and is denied."

Tarkington timely appealed.

DISCUSSION

Tarkington contends that the court erred by summarily denying his petition without appointing counsel for him. He urges that the failure to appoint counsel violated his statutory and constitutional rights, amounted to structural error, and requires reversal. We disagree.

1. *Senate Bill 1437*

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underlying felony and acted with reckless indifference to human life.' (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3.)"[3] (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410 (*Cornelius*); *People v. Verdugo*

---

[3]     Section 189, subdivision (e), does not apply if the victim is a peace officer under specified circumstances. (§ 1170.95, subd. (f).)

4

(2020) 44 Cal.App.5th 320, 326, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

Senate Bill 1437 also added section 1170.95, which permits persons convicted of murder under a felony murder or natural and probable consequences theory to petition in the sentencing court for vacation of their convictions and resentencing. Section 1170.95 provides in pertinent part: "A person convicted of felony murder or murder under a natural and probable consequences theory" may file a petition "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Section 1170.95 requires that the petition be filed in the sentencing court, and must include the petitioner's declaration showing eligibility, the case number, the year of conviction, and any request for counsel. (§ 1170.95, subd. (b); *Verdugo*, *supra*, 44 Cal.App.5th at p. 327, rev.gr.) Subdivision (c) of the statute lists the next steps in the petition process thusly: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the

5

petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

*Verdugo* recently clarified the parameters of the statutory scheme, explaining that a court's evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the facial sufficiency of the petition; a prebriefing, "first prima facie review" to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 327–330, rev.gr.; accord, *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177–1178; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976 [§ 1170.95 provides for two separate prima facie reviews, with the first focused on eligibility for relief and the second on entitlement to relief].)

In its initial review, the court determines whether any of the information required by section 1170.95, subdivision (b)(1) to be included in the petition is missing and cannot readily be ascertained by the court. If so, the court may deny the petition without prejudice to the filing of another petition containing the requisite information. (§ 1170.95, subd. (b)(2); *Verdugo*, *supra*, 44 Cal.App.5th at pp. 327–328, rev.gr.) "This initial review thus determines the facial sufficiency of the petition." (*Verdugo*, at p. 328.)

The next step, a prebriefing "first prima facie review," is a "preliminary review of statutory eligibility for resentencing," akin

6

to the procedure employed in a Proposition 36 or Proposition 47 context.[4]  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 328–329, rev.gr.; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598 (*Lewis*).)  The court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony murder theory.  (*Verdugo*, at pp. 329–330.)  If not, the court can dismiss any petition filed by an ineligible individual.  (*Id.* at p. 330.)  "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner."  (*Id.* at p. 329.)

"Because the court is only evaluating whether there is a prima facie showing the petitioner falls within the provisions of the statute, . . . if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction," evaluation of the petition proceeds to the "second prima facie review," in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief."  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 330, 328, rev.gr.)  In this second prima facie evaluation, the court

---

[4]     Proposition 36, the Three Strikes Reform Act of 2012; Proposition 47, the Safe Neighborhoods and Schools Act.

employs the familiar standard for issuance of an order to show cause in a habeas corpus proceeding. That is, the court must take petitioner's factual allegations as true and make a preliminary assessment regarding whether he or she would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328; *People v. Drayton, supra*, 47 Cal.App.5th at p. 980 [when evaluating whether petitioner has made a prima facie showing of entitlement to relief, court cannot weigh evidence or make credibility determinations, but need not credit factual assertions that are untrue as a matter of law].)

After such an order to show cause issues, absent a waiver and stipulation by the parties, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously . . . sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) At that hearing, the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. Both the prosecution and the petitioner may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).)

2. *The trial court correctly found Tarkington is ineligible for section 1170.95 relief*

Preliminarily, we observe that the record compels the conclusion that the trial court correctly found Tarkington is ineligible, as a matter of law, for relief under section 1170.95. Tarkington was not prosecuted on a felony murder or natural and probable consequences theory. Instead, he was the actual killer. Our opinion in his direct appeal, which described the evidence

presented at trial, demonstrates that the murder involved a single perpetrator, Tarkington; it was not a situation in which multiple persons carried out the attack.[5]  The jury instructions given in the case did not include any instruction on aiding and abetting, the natural and probable consequences doctrine, or the felony murder rule.  The verdict form contains the jury's finding that Tarkington *personally* used a deadly and dangerous weapon, a knife.  In short, the record shows that as a matter of law, Tarkington was the actual killer and was not tried using the natural and probable consequences doctrine or the felony murder rule; he was convicted on a theory that survives the changes to sections 188 and 189.  (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 674 [where petitioner was not charged or convicted under the felony murder rule or natural and probable consequences doctrine, summary denial of petition was proper]; *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev.gr.)  Consideration of the record to determine whether a petitioner has made the first prima facie showing, i.e., whether he is eligible for relief, is proper.[6]  (*People v. Torres*, *supra*, 46 Cal.App.5th at p. 1178; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *Lewis*,

---

[5]      The record includes our opinion resolving Tarkington's direct appeal.  "A court of appeal opinion, whether or not published, is part of the appellant's record of conviction. [Citations.]"  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev.gr.; *Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, rev.gr.)

[6]      Our Supreme Court is currently considering whether superior courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95.  (*Lewis*, *supra*, S260598.)

*supra*, 43 Cal.App.5th at p. 1138, rev.gr.)  Under no stretch of imagination, therefore, could Tarkington be eligible for relief under section 1170.95.

3. *Tarkington was not entitled to appointed counsel at the first prima facie review stage*

Tarkington nonetheless contends that the superior court was required to appoint counsel for him before denying the petition, simply because he checked the right boxes on a preprinted form.  Our colleagues in Divisions One, Five, Six, and Seven have rejected similar arguments.  (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.; *People v. Torres*, *supra*, 46 Cal.App.5th at pp. 1173, 1178; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58, rev.gr. [rejecting contention that trial court was statutorily required to appoint counsel once petitioner alleged he satisfied filing requirements, regardless of whether the petition's allegations were accurate]; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.)  Our Supreme Court is currently considering when the right to appointed counsel arises under section 1170.95, subdivision (c).  (*Lewis*, *supra*, S260598.)  Pending further guidance from our Supreme Court, we agree with the aforementioned authorities.

Tarkington maintains that the statutory language is plain and unambiguous, requiring that counsel "shall" be appointed.  (§ 1170.95, subd. (c).)  Thus, he contends, if the petition contains the required information and averments—even if incorrect—an attorney must be appointed at the outset.

When construing a statute, we must determine the Legislature's intent so as to effectuate the law's purpose.  (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106.)  We begin with an examination of the statute's words, giving them their usual and

10

ordinary meaning. (*People v. Colbert* (2019) 6 Cal.5th 596, 603; *People v. Ruiz*, at pp. 1105–1106; *In re C.H.* (2011) 53 Cal.4th 94, 100.) If not ambiguous, the plain meaning of the statutory language controls, and we need go no further. (*People v. Colbert*, at p. 603; *People v. Ruiz*, at p. 1106; *In re C.H.*, at p. 100.) We agree the statutory language requiring appointment of counsel is mandatory, but the pertinent question is *when* such appointment is required. On that point, when viewed in isolation, the statutory language is ambiguous. However, when viewed in the context of section 1170.95 as a whole, it is clear that counsel need not be appointed before the court determines the petitioner is eligible for relief. (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.)

*Verdugo* explained: "The first sentence of section 1170.95, subdivision (c), directs the court to review the petition and determine if the petitioner has made the requisite prima facie showing. The second sentence provides, if the petitioner has requested counsel, the court must appoint counsel to represent him or her. The third sentence requires the prosecutor to file and serve a response to the petition within 60 days of service of the petition and permits the petitioner to file a reply to the response. The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties. [Citations.]" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332, rev.gr.) "Nor would it make sense as a practical matter to appoint counsel earlier in the process since counsel's first task is to reply to the prosecutor's response to the petition. If . . . the court concludes the petitioner has failed to make the initial prima facie showing required by

11

subdivision (c), counsel need not be appointed.  Of course, if the petitioner appeals the superior court's summary denial of a resentencing petition, appointed counsel on appeal can argue the court erred in concluding his or her client was ineligible for relief as a matter of law." (*Id.* pp. 332–333.)  As *Verdugo* noted, the "first prima facie review" of the petition "must be something more than simply determining whether the petition is facially sufficient; otherwise, given subdivision (b)(2), this portion of subdivision (c) would be surplusage." (*Id.* at pp. 328–329.)

*Lewis* came to the same conclusion.  The court observed that when "the statutory framework is, overall, chronological, courts will construe the timing of particular acts" to occur in the order they appear in the text.  (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.)  Section 1170.95 is such a statute: it is "organized chronologically from its first subdivision to its last." (*Lewis*, at p. 1140.)  "Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.'  (§ 1170.95, subd. (c).)  . . . [T]he trial court's duty to appoint counsel does not arise unless and until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute." (*Id.* at p. 1140, fn. omitted; see *Cornelius*, *supra*, 44 Cal.App.5th at p. 58, rev.gr.)

Reading the law as Tarkington suggests would lead to anomalous results.  " 'It would be a gross misuse of judicial

12

resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief.  For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' " (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138, rev.gr., citing Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23:51(H)(1), pp. 23-150 to 23-151.)

Such is the case here.  The court summarily denied the petition at the "first prima facie review" stage, based on its finding that Tarkington is ineligible as a matter of law.  That finding is correct, as we have discussed.  Accordingly, the appointment of counsel was not statutorily required by section 1170.95.  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140, rev.gr. ["Because the trial court denied defendant's petition based upon his failure to make a prima facie showing that the statute applies to his murder conviction, defendant was not entitled to the appointment of counsel"]; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58, rev.gr.)

13

### 4. *Senate Bill 1437's legislative history*

The dissent opines that examination of successive drafts of Senate Bill 1437 demonstrates the Legislature always intended that a petitioner would be represented by appointed counsel immediately upon filing a complete petition. (Dis. opn., *post*, at pp. 12, 14–15.) To the contrary, comparison of the bill's final and preliminary versions suggests the opposite.

As we have described, section 1170.95 requires that the court make two distinct determinations on a resentencing petition: one regarding eligibility (whether the petitioner "falls within the provisions of this section"), and the second regarding entitlement (whether petitioner has made a prima facie showing he or she is "entitled to relief"). The Legislature's use of these different phrases mandates this conclusion. " 'Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning.' " (*Rashidi v. Moser* (2014) 60 Cal.4th 718, 725; *In re C.H.*, *supra*, 53 Cal.4th at p. 107; *People v. White* (2016) 3 Cal.App.5th 433, 447.) And, we must accord significance to every word in a statute and avoid a construction that renders words surplusage. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 611 [we assume each term has meaning and appears for a reason, and may not excise words from a statute]; *People v. Johnson* (2002) 28 Cal.4th 240, 246–247; *People v. Kareem A.* (2020) 46 Cal.App.5th 58, 71.)

The Legislature used this same phrasing in earlier versions of Senate Bill 1437. Senate Bill 1437 was introduced on February 16, 2018, and was amended twice before its enactment.

14

Both as introduced and as first amended, the bill required that upon receipt of the petition, the trial court would provide notice of the petition's filing to defense counsel and the prosecutor.[7] Both versions further mandated that the court request or require a response from these attorneys as to whether the petitioner was "*entitled to relief*" (italics added).[8] Both versions also provided that if the court found there was "sufficient evidence that the *petitioner falls within the provisions of this section*," it should hold a resentencing hearing. (Sen. Bill No. 1437, as introduced Feb. 16, 2018, § 6, italics added; *id.*, as amended in the Senate, May 25, 2018, § 6.) Thus, defense counsel and the prosecutor were always intended to brief *only* the question of the petitioner's *entitlement* to relief; the court was to determine *eligibility*— whether the petitioner "falls within the provisions of this section"—on its own, without briefing on the question from the parties.

---

[7] As introduced, the bill required that the court give notice to "the attorney who represented the petitioner in the superior court and to the district attorney in the county in which petitioner was prosecuted." (Sen. Bill No. 1437, as introduced Feb. 16, 2018, § 6.) As amended in the Senate, the bill added that the court should give notice to "the public defender if the attorney of record is no longer available." (*Id.*, as amended May 25, 2018, § 6.) For ease of reference, we here use the shorthand terms "defense counsel" and "the prosecutor."

[8] The first version of the bill required that the court request a response from both parties with no time frame specified. (Sen. Bill No. 1437, as introduced Feb. 16, 2018, § 6.) The second version required that each party file a response within 60 days. (*Id.*, as amended May 25, 2018, § 6.)

The bill was amended to its final form in the Assembly on August 20, 2018. That amendment did away with the requirement that the court give notice and require or request a response from the attorneys as the first step in the process. Instead, the Legislature put into place the sequential procedure described in *Lewis* and *Verdugo*. (Sen. Bill No. 1437, as amended Aug. 20, 2018, § 4; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at p. 332, rev.gr.) Using the same language employed in the earlier versions, the August 20 amendment made explicit that two, distinct prima facie showings were required. (Sen. Bill No. 1437, as amended Aug. 20, 2018, § 4; § 1170.95, subd. (c).)

Thus, the dissent's position that "[e]very version of [Senate Bill] 1437 contemplated that petitioners would be represented by counsel upon filing a sufficient petition" is not accurate. (Dis. opn., *post*, at p. 12.) Senate Bill 1437 *never* contemplated that counsel would be involved in the inquiry as to whether the petitioner "falls within the provisions of this section," i.e., eligibility. Counsel was always expected to weigh in only on the question of *entitlement* to relief, i.e., the question that the bill's final version made clear comes *after* the court determines eligibility. In short, all three versions of the bill limited counsel's involvement to the entitlement, not the eligibility, inquiry.

Given this, section 1170.95, subdivision (c) is most logically construed as providing for appointment of counsel only when the entitlement inquiry arises in the second prima facie review. As *Verdugo* explained: "Unlike the May 25, 2018 version of the bill, which directed the court to initiate the briefing process upon receipt of the petition without any review at all, even for the petition's completeness, this final iteration, which authorizes the

16

court both to dismiss the petition if it lacks any required information and to determine if there is a prima facie showing the petitioner falls within the provisions of the statute before ordering briefing, indicates the Legislature's intent that the superior court perform a substantive gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 331, rev.gr.) Thus, contrary to the dissent's analysis, the legislative history of the bill does not support the conclusion that counsel must be immediately appointed.[9]

Tarkington and the dissent point to two letters appended to an amicus curiae brief filed by The Justice Collaborative, which purportedly demonstrate the Legislature's intent to require appointment of counsel before a court summarily denies a section 1170.95 petition. (Dis. opn., *post*, at pp. 16–19.) In the two documents offered—an August 28, 2018 letter from the Judicial

---

[9] The dissent also argues that if the Legislature intended the court to evaluate the petition before appointing counsel, the briefing deadlines would run from the date of the court's eligibility finding, not from the date the petition was filed. (Dis. opn., *post*, at p. 15; see § 1170.95, subd. (c) ["[t]he prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days" after the prosecutor's response].) We see no contradiction. It is reasonable to infer that the Legislature simply intended to ensure that the petition is evaluated, from start to finish, in an expeditious fashion. It is to be expected that the superior court will promptly rule on eligibility; running the briefing period from the date of the petition's filing ensures that this is so, absent good cause for a longer period.

17

Council of California to the bill's author, and a September 13, 2018 letter from the Judicial Council to former Governor Edmund G. Brown, Jr.—the Judicial Council opined that Senate Bill 1437 should be amended to allow for summary dismissal of petitions that do not make a prima facie case, and for appointment of counsel once a prima facie showing is made.  Based on these letters, the dissent makes the mistaken pronouncement that the Legislature "rejected a request to allow courts to deny petitions summarily without appointing counsel."  (Dis. opn., *post*, at p. 16.)

But the two letters in question do not demonstrate that the Legislature rejected a proposed change to the bill.  For one thing, the letters are not cognizable legislative history, because there is no indication they were considered by the Legislature as a whole.  As "a general rule[,] in order to be cognizable, legislative history must shed light on the collegial view of the Legislature *as a whole*.  [Citation.]  . . . [O]ur Supreme Court has said, 'We have frequently stated . . . that the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation.  [Citations.]' [Citation.]" (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30 (*Kaufman*), quoting *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.)  Therefore, unless there is a showing that particular materials were part of the debate on the legislation and were communicated to the Legislature as a whole before passage of the bill, they are not cognizable legislative history.  (See, e.g., *People v. Garcia* (2002) 28 Cal.4th 1166, 1175–1176, fn. 5 [" 'In construing a statute we

18

do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it.' "]; *People v. Johnson*, *supra*, 28 Cal.4th at p. 247 [memorandum prepared by Office of the Attorney General—the source of legislation—was irrelevant absent showing awareness by Legislature as a whole]; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9 ["the views of individual legislators as to the meaning of a statute rarely, if ever, are relevant"]; *Cequel III Communications I, LLC v. Local Agency Formation Com. of Nevada County* (2007) 149 Cal.App.4th 310, 326, fn. 3 ["Letters to individual legislators, including the bill's author, are not matters constituting cognizable legislative history if they were not communicated to the Legislature as a whole."]; *Kaufman*, at p. 38 [letters to particular legislators, including bill's author; letters to Governor urging signing of bill; subjective intent reflected by statements of interested parties and individual legislators, including bill's author, not communicated to Legislature as a whole; and "State Bar's view of the meaning of proposed legislation," do not constitute legislative history].)[10]

---

[10]    Other authorities are in accord.  (See, e.g., *People v. Wade* (2016) 63 Cal.4th 137, 143; *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 173 [memorandum from city that sponsored legislation, indicating its intent to exclude certain data bases from definition of public record, did not reliably indicate Legislature as a whole was aware of that objective]; *Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 492, fn. 11; *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088, fn. 11 ["As a general rule, 'legislative history must shed light on the collegial view of the Legislature *as a whole*' "]; *Raef v. Appellate Division of*

Here, we do not have even a statement of the author's intent; instead, we have a letter opining that the law should be amended, and the bill's author's inaction in response. If the views of particular legislators are not cognizable legislative history, certainly letters written to them in an attempt to influence their views must be disregarded. (*People v. Patterson* (1999) 72 Cal.App.4th 438, 443–444.) There is no showing that the concerns expressed in the Judicial Council's letter were ever communicated to, contemplated by, or debated by the Legislature as a whole. There is certainly no showing that the Legislature ever considered and voted against amending the bill as suggested.[11] Thus, there is no basis to conclude that the Legislature expressly declined to amend the bill.

The letter to the Governor was sent *after* Senate Bill 1437 was enacted by the Legislature, and consequently cannot shed

_____

*Superior Court* (2015) 240 Cal.App.4th 1112, 1131 [views of interested persons are not cognizable evidence of the Legislature's intent]; *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1444, fn. 6; *PaintCare v. Mortensen* (2015) 233 Cal.App.4th 1292, 1309–1310, fn. 11; *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1409, fn. 2; *Slocum v. State Bd. of Equalization* (2005) 134 Cal.App.4th 969, 980 [letter and memorandum from county administrator to bill's author not cognizable legislative history; at most they reflected individual views or understandings of the author and county officials].)

[11] Indeed, even if the letter were cognizable, we could only speculate about the reason for the author's inaction. It is entirely possible that the author believed amendment was unnecessary because the statute as written already provided for summary dismissal and appointment of counsel after the first prima facie review, as multiple appellate courts have since held.

any light on the Legislature's intent.[12]  (See *People v. Fuhrman* (1997) 16 Cal.4th 930, 939, fn. 8 [memorandum analyzing assembly bill, prepared by Judicial Council subcommittee after Governor signed bill into law, was not "within the class of documents that traditionally has been considered in determining legislative intent"]; *Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 734; *California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 501; *Witt Home Ranch, Inc. v. County of Sonoma* (2008) 165 Cal.App.4th 543, 558, fn. 8 [opinions of Legislative Analyst and Attorney General prepared after passage of bill could not be considered because they provided no evidence of legislative intent].)[13]

The dissent ignores these well-settled principles by arguing that the letter to the Governor, at least, should be treated as an enrolled bill report.  (Dis. opn., *post*, at pp. 20–21.)  (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 ["we have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent"]; *People v. Ruiz, supra*, 4 Cal.5th at p. 1111, fn. 3.)  But the letter to the Governor is simply not an

---

[12]     Because they are not proper subjects of judicial notice, we decline to judicially notice the documents attached as exhibits to the amicus curiae brief filed by The Justice Collaborative, i.e., the two letters and a guidebook prepared to assist defendants and their families in understanding Senate Bill 1437.

[13]     For the same reasons, and because opinions of interested parties not communicated to the Legislature as a whole do not cast light on the Legislature's intent, the dissent's reliance on a letter from the San Diego District Attorney to the Governor after Senate Bill 1437's passage is unavailing.

enrolled bill report or its equivalent. (See *Chino MHC, LP v. City of Chino* (2012) 210 Cal.App.4th 1049, 1067 [an enrolled bill report " ' "is prepared by a department or agency in the executive branch that would be affected by the legislation" ' " and is forwarded to the Governor before he or she decides whether to sign the enrolled bill]; *Kaufman, supra,* 133 Cal.App.4th at p. 40.) The letter in question was not a "report" to the Governor by an executive agency, nor is it analogous to such.[14]

---

[14] Other cases cited by the dissent are no more help. The dissent avers that *Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, "cit[ed] correspondence from the Judicial Council to the bill's author as evidence of legislative intent in successive drafts of legislation." (Dis. opn., *post*, at p. 21.) It did not. *Pacific Bell* noted that the Judicial Council dropped its opposition to a bill after the bill was amended, as reflected in a letter from a Judicial Council legislative policy analyst to the chairman of the Assembly Appropriations committee, *not* the bill's author. (*Pacific Bell*, at p. 279.) And the Judicial Council's change in position was conveyed in a report by the Assembly Committee on the Judiciary in preparation for a hearing. (*Id.* at pp. 279–280.) Thus, unlike in the present case, the Judicial Council's views were communicated to various legislative committees. (See *Kaufman, supra,* 133 Cal.App.4th at p. 39 [committee reports are routinely available to the Legislature as a whole].) Contrary to the dissent's characterization, we do not suggest that letters to committee chairpersons are necessarily cognizable legislative history. (Dis. opn., *post*, at p. 21, fn. 10.) The determinative fact is whether the material was shared with and considered by the Legislature as a whole. *Ghanooni v. Super Shuttle* (1992) 2 Cal.App.4th 380, also cited by the dissent (Dis. opn., *post*, at p. 21), observed that language in a particular statute could be traced to a proposed amendment by the Judicial Council that was "circulated" to interested parties and redrafted after the council received comments; ultimately, both versions of

22

The dissent also implies that because the Judicial Council is the judicial branch's policymaking body, its views are significant. (Dis. opn., *post*, at p. 20.) But this misses the point. Whether the Judicial Council's—or any governmental body's—views assist with an interpretation of legislative intent turns not on the importance or prestige of that body, but on whether circumstances show its objections or requests were considered by *the Legislature*, as opposed to a *single legislator*. It is one thing to say the Legislature rejected a proposed amendment after considering it; it is quite another to assume that the Legislature as a whole rejected a proposal that, as far as we can tell, was never shared with anyone other than the author.

5. *Tarkington's other arguments lack merit*

Tarkington argues the statute should be read to require counsel at the outset for several reasons. He asserts that Senate Bill 1437 gave him a liberty interest, presumably in having counsel appointed, of which he could not be deprived. But Tarkington is categorically ineligible for relief under section 1170.95, as we have explained. Therefore, it follows ipso facto that he could have had no liberty interest in the appointment of counsel, and could have had no expectation that counsel would be appointed for him.

---

the council's proposals were reflected in the law passed. (*Ghanooni*, at pp. 384–385.) Thus, in that case the Judicial Council's input was not limited to a letter to the bill's author alone, as are the materials relied upon by the dissent. In *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1116, the court relied on successive versions of a bill as an indication of legislative intent, not on a letter sent solely to a bill's author.

Next, Tarkington avers that the appointment of counsel at the outset is necessary because implementation of section 1170.95 is "complicated" and, without counsel to advocate for a petitioner, petitions are likely to be erroneously denied. He worries that the "record of conviction" is not clearly defined by the statute and may be voluminous; and in older cases, where the record may be unavailable, the court may not have "the time and resources" to uncover adequate information. Without counsel, he maintains, there is "no guarantee" the trial court will review sufficient information to give it a "full understanding" of the case.

These concerns are unfounded. *Verdugo* explained what information a court should examine in making the threshold eligibility determination: "Although subdivision (c) does not define the process by which the court is to make this threshold determination, subdivisions (a) and (b) of section 1170.95 provide a clear indication of the Legislature's intent. . . . [S]ubdivision (b)(2) directs the court in considering the facial sufficiency of the petition to access readily ascertainable information. The same material that may be evaluated under subdivision (b)(2)—that is, documents in the court file or otherwise part of the record of conviction that are readily ascertainable—should similarly be available to the court in connection with the first prima facie determination required by subdivision (c). In particular, because a petitioner is not eligible for relief under section 1170.95 unless he or she was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine [citation], the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for

24

a negotiated plea; and the abstract of judgment. Based on a threshold review of these documents, the court can dismiss any petition filed by an individual who was not actually convicted of first or second degree murder. The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 [citation]—for example, a petitioner who admitted being the actual killer as part of a guilty plea or who was found to have personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide within the meaning of section 12022.53, subdivision (d). [Citation.]" (*Verdugo, supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *People v. Edwards, supra*, 48 Cal.App.5th at pp. 673–674; *People v. Torres, supra*, 46 Cal.App.5th at p. 1178; *Lewis, supra*, 43 Cal.App.5th at pp. 1137–1138, rev.gr. [as with analogous determinations of eligibility under Propositions 36 and 47, court considering a section 1170.95 petition is permitted to examine the record of conviction when evaluating a petitioner's prima facie showing of eligibility].)

Contrary to Tarkington's arguments, the preliminary determination that a petitioner is ineligible will generally be straightforward and uncomplicated. In most or at least many cases, the information necessary to make the first prima facie eligibility determination will be readily ascertainable based on clear and indisputable portions of the record. A court can determine whether the defendant was convicted of a qualifying crime, was the actual killer, or was tried under the felony murder or natural and probable consequences doctrines, by a simple examination of the record, including, inter alia, the charging

25

document, the verdict (or plea) forms, the jury instructions, and any appellate opinion in the case.  (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev.gr. [an appellate opinion is part of the record of conviction; trial court may properly consider it when determining whether petitioner made a prima facie showing of eligibility under section 1170.95]; accord, *People v. Edwards*, *supra*, 48 Cal.App.5th at pp. 674–675.)

At this stage, a court must make all factual inferences in the petitioner's favor (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.); thus, there is no danger the court will find ineligibility based upon an unclear or missing record.  Unless the record conclusively shows that the defendant is ineligible as a matter of law, the court should move to the next step and appoint counsel. As the district attorney states in her amicus curiae brief: "the prima facie showing is very low.  The court reviews only whether the defendant could have been convicted under a theory of murder that is now invalid after [Senate Bill] 1437.  This would normally require looking only at the jury instructions or the appellate opinion to see if the defendant was convicted as an accomplice, as opposed to being the direct perpetrator.  *The court should only decline to find a prima facie case where the defendant is ineligible as a matter of law and there is no contested issue of law or fact for the court's resolution.*"  (Italics added.)  If there is any issue, the court should proceed to the second prima facie review.  At that point, the appointment of counsel, where requested, is mandatory.

Tarkington next expresses concern that if requested counsel is not appointed immediately upon the filing of a petition, the result will be a plethora of erroneous ineligibility findings and resultant appeals.  In its amicus brief, the alternate public

26

defender states that more than 100 summary denials of section 1170.95 petitions have occurred and are being appealed. Tarkington and the alternate public defender fear that in such cases, "an adequate record" will not have been developed below. But the mere existence of summary denials is not evidence of error; it is, of course, entirely possible that the trial courts in these cases *correctly* found the petitioners ineligible. As the instant matter demonstrates, it has not been the case that only defendants convicted of qualifying crimes under qualifying theories have petitioned. (See, e.g., *People v. Cervantes* (2020) 44 Cal.App.5th 884, 886 [petitioner who was convicted of voluntary manslaughter was ineligible for relief under section 1170.95]; accord, *People v. Flores* (2020) 44 Cal.App.5th 985, 989; *People v. Turner* (2020) 45 Cal.App.5th 428, 438; *People v. Sanchez* (May 7, 2020, E072647) __ Cal.App.5th __ [2020 Cal.App.Lexis 389].) And, where ineligibility is ascertainable based on the record of conviction, no additional record need be "developed"; to do so would be a waste of resources. Here, for example, no further record development could change the fact that Tarkington was the only perpetrator, was the actual killer, and was not tried under the natural and probable consequences or felony murder doctrines.

Nor do we detect any possibility that counsel's absence could prejudice a petitioner in a significant way, or that counsel's presence at this stage is necessary to preserve his or her rights. The instant case provides an apt illustration of why this is so. The court's ruling turned on one simple, easily ascertainable, and undisputed fact: Tarkington was the actual killer. It is unclear how appointed counsel could have assisted Tarkington in any meaningful way. Tarkington is ineligible as a matter of law, pure

and simple; counsel's representation could have done nothing to change that fact.

6. *Reversal is not required*

To the extent Tarkington intends to argue that the court's order must be reversed because the court failed to specify what portions of the record it relied upon, we disagree. To facilitate appellate review and ensure a clear record, a court ruling on a section 1170.95 petition should indicate on the record, and in its order or in a minute order, what materials it reviewed and relied upon to make its ineligibility finding. The court did not do so here. But the omission is of no moment.

As noted, in making the threshold determination of eligibility, a court may rely upon readily ascertainable materials in the court file and record of conviction.[15] (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1138, rev.gr.) Certainly, it would not have been difficult to glean from the record here that Tarkington was ineligible. That the court did examine the record is evident from its description of the case in its written order. We have taken

---

[15] The dissent frames the issue before us as whether a court, prior to the appointment of counsel or briefing, may "examine its records *or its memory*" to determine whether the prima facie showing was met. (Dis. opn., *post*, at p. 10, italics added.) This is a red herring. We do not hold that a court can simply rely on its memory of a case to make an eligibility or entitlement finding, the parties do not so argue, we are unaware of any court that has so held, and—as the dissent seems to acknowledge—the trial court did not do so here. (Dis. opn., *post*, at p. 23.) Memory is fallible, and obviously does not suffice. A court's ruling on the first prima facie eligibility showing must be based on the record in the case.

judicial notice—at Tarkington's request—of the record in his case.[16] As discussed, it indisputably shows Tarkington is ineligible. This is not a case in which the court may have made a factually erroneous finding. Thus, the trial court's failure to sufficiently identify the portions of the record upon which it relied does not warrant reversal.

---

[16] Given that we have taken judicial notice of the record in this case at Tarkington's request, the dissent's criticism that our holding rests on our "independent review of the record," is curious. (Dis. opn., *post*, at p. 25.) And, contrary to the dissent's assertion that review of the record is likely to be a time-consuming task that the Legislature hoped to spare the courts, we can confirm that the time required to review the relevant portions of the record in this case—i.e., the jury instructions, the verdict forms, and our prior opinion in the case—did not prove to be onerous.

DISPOSITION

The order is affirmed.

**CERTIFIED FOR PUBLICATION**


                                        EDMON, P. J.


I concur:



            EGERTON, J.


30

LAVIN, J., Dissenting:

Defendant Anthony Lyle Tarkington filed a petition for resentencing under Penal Code section 1170.95 that was complete, filed in the correct court, served on the right parties, and alleged eligibility under the statute. He also requested the appointment of counsel. This appeal presents the following question: May a trial court summarily deny a statutorily-compliant resentencing petition without appointing counsel if it determines that the petitioner was the actual killer and, therefore, not entitled to statutory relief? I would hold that the answer to that question is "no," and reverse. Therefore, I respectfully dissent.

## PROCEDURAL BACKGROUND

By information dated December 18, 1996, Tarkington was charged with one count of murder (Pen. Code,[1] § 187, subd. (a); count 1) with a knife (§ 12022, subd. (b)). The information also alleged Tarkington had been convicted of three prior strikes in 1982 (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). After a trial, a jury convicted him of second degree murder and found the personal-use and strike allegations true. The court imposed a third-strike sentence of 46 years to life—three times the required term of 15 years to life for count 1 plus one year for the personal-use allegation. (See § 1170.12, subd. (c)(2)(A)(i).)

On January 28, 2019, Tarkington filed a petition for resentencing under section 1170.95. The petition asked the court to appoint counsel to represent him during the resentencing process.

---

[1] All undesignated statutory references are to the Penal Code.

On February 13, 2019, the court issued the following order denying the petition:

> "The Court has considered the petition for resentencing filed by defendant Anthony Tarkington on January 28, 2019.

> "In 1997, Tarkington was convicted of second degree murder for stabbing a man to death on June 22, 1996. The victim was waiting on line for free donuts and coffee in the skid row area of Los Angeles. Tarkington was convicted in part when DNA confirmed a spot of blood on his shoe was the victim's.

> "As the actual killer, Tarkington is not entitled to relief under Penal Code § 1170.95.

> "The petition for resentencing is unmeritorious and is denied."

The minute order of that date noted that Tarkington was not present and was not represented by counsel. The record does not reveal the basis for the court's factual conclusions.

Tarkington filed a timely notice of appeal.

## DISCUSSION

Tarkington contends the trial court erred by summarily denying his resentencing petition without appointing an attorney to represent him or receiving briefing from the prosecution. The People argue that because Tarkington was the actual killer, section 1170.95 does not apply to him, and he cannot receive any benefit from it, including the appointment of counsel; they do not explain what process the court should use to reach that

conclusion. The majority holds that the trial court may review the record of conviction to determine whether it "conclusively shows that the defendant is ineligible as a matter of law" before appointing counsel or receiving a responsive brief from the prosecution; if so, it may summarily deny the petition. (Maj. opn. *ante*, p. 26.)

I agree with Tarkington.

## 1.      Senate Bill No. 1497

Murder is "the unlawful killing of a human being … with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. (§ 188.) Express malice is the intent to kill, whereas implied malice exists "where the defendant … acted with conscious disregard that the natural and probable consequences of [his] act or actions were dangerous to human life. [Citation.]" (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.)

"Not all murder requires the People to prove the defendant killed intentionally or with conscious disregard for life," however. (*People v. Rios* (2000) 23 Cal.4th 450, 460, fn. 6.) A killing may also become murder by operation of the felony-murder rule. "Under the felony-murder rule, a homicide is murder when it occurs in the course of certain serious and inherently dangerous felonies. [Citations.] In such cases, the intent to commit a dangerous felony that actually results in death is substituted for malice, thus establishing the extent of culpability appropriate to murder. [Citations.]" (*Ibid.*) "Felony-murder liability," therefore, "does not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony. [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)

"Murder is divided into first and second degree murder. (§ 189.) 'Second degree murder is the unlawful killing of a human

3

being with malice … .' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) "If the … killing was also deliberate and premeditated, the jury could convict the defendant of first degree murder." (*People v. Gonzalez, supra,* 5 Cal.5th at p. 197.) Felony murder, on the other hand, was formerly divided into degrees based on the felony committed. "If the felony [was] listed in section 189, the murder [was] of the first degree; if not, the murder [was] of the second degree. [Citations.]" (*People v. Gonzalez, supra,* 54 Cal.4th at p. 654.)

Senate Bill No. 1437 (S.B. 1437), which took effect on January 1, 2019, changed these rules to ensure a "person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

First, S.B. 1437 limited accomplice liability for murder. Under prior California law, every accomplice to an enumerated felony could be convicted of first degree murder if a death occurred during the commission of that felony—regardless of whether the accused killed or intended to kill. (See *People v. Dillon* (1983) 34 Cal.3d 441, 462–472.) Similarly, "a defendant who aided and abetted a crime, the natural and probable consequence of which was murder, could be convicted not only of the target crime but also of the resulting murder"—regardless of whether he acted with malice aforethought. (*In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

Now, however, a person may be convicted of first degree murder only if: he was the actual killer; *or* with the intent to kill, he aided and abetted the actual killer's commission of first degree murder; *or* he acted as a "major participant" in a felony listed in section 189 and with "reckless indifference to human life." (§ 189,

4

subd. (e), as amended by Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3) ["Except as stated in subdivision (e) of section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice may not be imputed to a person based solely on his or her participation in a crime."], as amended by Stats. 2018, ch. 1015, §3.)[2]

Second, S.B. 1437 abolished second degree felony murder. (Stats. 2018, ch. 1015, §2, amending § 188, subd. (e)(3).) Thus, the felony murder doctrine now applies only to those felonies listed in section 189, subdivision (a), and to accomplices who meet the requirements in section 189, subdivision (e).

In addition to changing the law of murder prospectively, S.B. 1437 gave people who had been convicted under one of the now-invalid theories the opportunity to petition for resentencing under newly-enacted section 1170.95. (Stats. 2018, ch. 1015, § 4.) Section 1170.95, subdivision (a),[3] describes who may petition for resentencing under the statute. Subdivision (b) explains what information the petition must contain, where the petitioner must file it, who the petitioner must serve, and what the court should do if it's incomplete. Subdivision (c)—the section at issue here— describes the process the court uses to determine whether the petitioner is entitled to an evidentiary hearing. Finally, subdivisions (d)–(g) describe the procedures for holding an evidentiary hearing, the type of evidence that may be admitted,

---

[2] In addition, an accomplice may be still be convicted of first degree felony murder if the victim was a peace officer engaged in the performance of his duties, and the accomplice knew or reasonably should have known this. (§ 189, subd. (f).)

[3] All undesignated subdivision references are to section 1170.95.

the burden of proof, and the requirements for resentencing an eligible petitioner.

## 2.    Standard of Review

Section 1170.95's procedural requirements are a "question[ ] of statutory interpretation that we must consider de novo." (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796.) To determine intent, we first examine the statutory language and give the words their ordinary meaning. (*Ibid*.)

If the statutory language is unambiguous, its plain meaning controls; if the statutory language is ambiguous, " ' "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.]' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.)

## 3.    Section 1170.95

Section 1170.95 establishes a four-step resentencing process: the petition, the prima facie review, an evidentiary hearing, and the resentencing.

The court uses the first two steps to evaluate whether the petitioner is entitled to an evidentiary hearing: First, the court assesses the petition's sufficiency. That is, did the petitioner comply with the requirements of section 1170.95, subdivision (b)? If the answer is yes, the court proceeds to step two, in which,

6

using the process laid out in subdivision (c), the court determines whether the petitioner has made a prima facie showing that he or she is entitled to relief. If so, the court must issue an order to show cause why relief should not be granted and proceed to step three, the evidentiary hearing. If not, the court may deny the petition.

### 3.1. Does the petition comply with subdivision (b)?

The process begins when the petitioner files and serves a petition that complies with the requirements of section 1170.95, subdivision (b)(1). Subdivision (b)(1) states:

> "The petition shall be filed with the court that sentenced the petitioner and served by the petitioner on the district attorney, or on the agency that prosecuted the petitioner, and on the attorney who represented the petitioner in the trial court or on the public defender of the county where the petitioner was convicted. If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition. The petition shall include all of the following:

> "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a).

> "(B) The superior court case number and year of the petitioner's conviction.

"(C)   Whether the petitioner requests the
        appointment of counsel."

(§ 1170.95, subd. (b)(1).) To comply with subdivision (b)(1)(A), the petitioner must declare that "all of the following conditions apply:"

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

> "(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

> "(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

(§ 1170.95, subd. (a).)

A petition is sufficient if it meets the requirements of subdivision (b)(1). On the other hand, if the petitioner does not comply with subdivision (b)(1), and the court cannot readily supply any missing information, the court may summarily deny the petition under subdivision (b)(2):

> "If any of the information required by this subdivision is missing from the petition and cannot be readily ascertained by the court, the court *may*

8

> *deny the petition* without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information."

(§ 1170.95, subd. (b)(2), italics added.)

The court's review at this stage is narrow: Did the petitioner check the correct boxes? Does the case number exist? Was the petition filed in the right county? Were the necessary parties served? Nevertheless, subdivision (b)(2) demonstrates that the Legislature knew how to give the courts power to deny petitions summarily. It did so in subdivision (b)(2). But it did not do so anywhere else in the statute.

### 3.2 Is the petitioner entitled to an evidentiary hearing?

If the petition is sufficient—that is, if it complies with the requirements in section 1170.95, subdivision (b)—the court moves on to the briefing stage, described in subdivision (c), in which it tests the allegations in the petition:

> "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he

9

or she is entitled to relief, the court shall issue an order to show cause."

(§ 1170.95, subd. (c).)

This court is asked to interpret subdivision (c) to decide the exceedingly narrow question of what must occur—and in what order—*after* the court receives a complying petition but *before* it issues an order to show cause. Specifically, does the first sentence of subdivision (c) allow the court—before appointing counsel or receiving responsive briefs—to examine its records or its memory, determine the petitioner has not made the required prima facie showing, and summarily deny the petition? I conclude it does not.

## 4. Plain Meaning

At first blush, subdivision (c) seems clear. The first sentence states the rule: "The court shall review the petition and determine if the petitioner has made a prima facie showing that [he or she] falls within the provisions of this section." (§ 1170.95, subd. (c).) The rest of the subdivision establishes the process for complying with that rule: Appoint counsel, if requested. Wait for the prosecutor's required response and the petitioner's optional reply. If the petitioner makes a prima facie showing, issue an order to show cause.

10

Nevertheless, the majority points to a tension between subdivision (c)'s use of *prima facie* in both the first sentence[4] and the last sentence.[5] (Maj. opn. *ante*, at pp. 10–11.)

## 5. Legislative History

The majority "agree[s] the statutory language requiring appointment of counsel is mandatory," but concludes "the statutory language is ambiguous" as to "*when* such appointment is required." (Maj. opn. *ante*, at pp. 10–11.)[6] Likewise, the District

---

[4] "The court shall review the petition and determine if the petitioner has made a *prima facie* showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c), italics added.)

[5] "If the petitioner makes a *prima facie* showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c), italics added.)

[6] Following *People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*) (rev. granted Mar. 18, 2020, S260598), the majority concludes that the sentences in subdivision (c) are organized "chronologically" and, because "prima facie" appears twice, the petitioner must make two prima facie showings. (Maj. opn. *ante*, at pp. 11–12.) That is, the first sentence of subdivision (c) requires the court to determine whether the petitioner has made a prima facie showing that he falls within the provisions of the statute. (§ 1170.95, subd. (c).) The requirement to appoint counsel appears in the second sentence. (*Ibid*.) Because the first sentence appears before the second sentence, the court must make a "first" prima facie determination before appointing counsel. (*Lewis*, at pp. 1139–1140.)

But *Lewis*'s holding rests on a false premise. Certainly, as that opinion notes, the *subdivisions* in section 1170.95 proceed chronologically. (*Lewis, supra,* 43 Cal.App.5th at p. 1140.) But it does not follow, as *Lewis* assumes, that the sentences *within* each subdivision are likewise chronological. To the contrary, they

11

Attorney, as amicus curiae, suggests that "the statutory language is ambiguous about whether the court must appoint counsel in all petitions or only after the court finds a prima facie case." To resolve the question of whether subdivision (c) contemplates one prima facie showing or two, I turn to the legislative history.

### 5.1. Every version of S.B. 1437 contemplated that petitioners would be represented by counsel upon filing a sufficient petition.

S.B. 1437's textual history clarifies that the Legislature contemplated a petitioner would be represented by counsel upon filing a sufficient petition, and counsel would help the court determine whether to hold a resentencing hearing. (See, e.g., *Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, 279, fn. 4 ["Successive drafts before the Legislature may be helpful in interpreting a statute when its meaning is unclear."].)

S.B. 1437 was introduced on February 16, 2018, and amended twice—once in the Senate, on May 25, 2018, and once in the Assembly, on August 20, 2018. (S.B. 1437, Sen. Final Hist. (2017–2018 Reg. Sess.) p. 664.) The August 20, 2018 version of

---

plainly are not. Take subdivision (b) for example. Subdivision (b)(1) starts by explaining that the petition must be filed in the sentencing court. Then, it lists the people and agencies that must be served. Next, it circles back to note that if the original sentencing judge is not available, the presiding judge can appoint someone else to rule on the petition. Only after addressing filing, service, and the decision-maker does it mention what the petition should say. Then, its focus returns to the decision-maker, who may deny the petition if it is missing required information. I see no reason to assume subdivision (c) proceeds chronologically when subdivision (b) clearly does not.

the bill was then passed by the Senate and signed into law. (*Ibid*.)

As introduced, S.B. 1437 required the court, upon receipt of a complying petition, to assemble various documents,[7] notify counsel that a petition had been filed, and request a written response. The notice section stated:

> "The court shall also provide notice to the attorney who represented the petitioner in the superior court and to the district attorney in the county in which petitioner was prosecuted. Notice shall inform each that a petition has been filed pursuant to this section and shall request that a response be filed from both parties as to whether the petitioner is entitled to relief."

(S.B. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6.)

Apparently realizing that petitioners' trial attorneys might not still be available, on May 25, 2018, the Senate amended the bill to allow the court to provide notice **either** "to the attorney who represented the petitioner in the superior court, **or** to the public defender if the attorney of record is no longer available … ." (S.B. 1437 (2017–2018 Reg. Sess.) as amended May

---

[7] The court was required to obtain: a copy of the charging document; the abstract of judgment; if the conviction was by plea, a copy of the reporter's transcript of the plea; if a trial was held, the verdict forms; the sentencing transcript; and "[a]ny other information the court finds relevant to its decision, including information related to the charging, conviction, and sentencing of the petitioner's codefendants in the trial court." (S.B. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6.)

25, 2018, § 6, italics omitted, bold added.) It also upgraded the briefing requirement from a "request that a response be filed from both parties" to an order "that a response from both parties … is required to be filed within 60 days." (S.B. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6; *id.*, as amended May 25, 2018, § 6.)

On August 20, 2018, the Assembly amended S.B. 1437 to relieve the trial courts of most of these tasks. As amended, the bill no longer required the court to compile records, notify the parties, or request briefing. (S.B. 1437 (2017–2018 Reg. Sess.) as amended Aug. 20, 2018, § 4.) Instead, the amended bill required *the petitioner* to notify the prosecutor and either his trial attorney or the public defender by serving them with copies of the petition. (*Ibid.*) It also required him to state whether he requested the appointment of counsel. (*Ibid.*) This provision became section 1170.95, subdivision (b).

Similarly, in the Assembly version, the court no longer had to order the prosecutor and defense counsel to respond to the petition within 60 days. Instead, only the prosecutor had to respond—and the deadline was automatic. The court still had to appoint counsel to represent the petitioner, but that requirement was made explicit and only upon request. This amendment also offered greater flexibility: The court could appoint a new lawyer if trial counsel were no longer available, and petitioners could retain private counsel or represent themselves if they wished to do so. This provision became section 1170.95, subdivision (c).

In sum, the first two versions of S.B. 1437 *assumed* that once he filed a sufficient petition, the petitioner would be represented by counsel—either because he was already represented or because the court would issue any order necessary

14

to effectuate the representation; the final version of the bill *explicitly requires* the court to appoint counsel on request. But there is no indication the Legislature's views about timing changed.

To the contrary, if the Legislature had anticipated that the court would undertake its own review of the merits of the petition as an intermediate step before appointing counsel, it would have calculated the deadlines not from the date of service of the petition but instead from the date the court completed its initial review. And though the Legislature required the prosecution to respond within 60 days of being served with the petition, it did not create a deadline for the court to conduct an intermediate review. Nor is there any provision allowing the court to relieve the parties of these statutory requirements.[8]

By omitting those steps, the Legislature signaled it did not intend for the court and prosecutors to duplicate their efforts by conducting the same review of the same documents at the same time. Instead, it appears from the history outlined above that the bill was revised to ensure every petitioner who wanted a lawyer would have one—not to impose a barrier where none had existed.

---

[8] Significantly, this differs from habeas corpus proceedings, in which filing the petition triggers a deadline for *the court*—not for the parties. (Cal. Rules of Court, rule 4.551(a)(3)(A).) Likewise, in habeas proceedings, a response need only be filed if the court requests one, and it's the court's request that triggers the deadline for the response. (*Id.*, rules 4.551(a)(4)(C), 4.551(b).)

### 5.2. The Legislature rejected a request to allow courts to deny petitions summarily without appointing counsel.

Certainly, that is the procedure the bill's author, justice community stakeholders, and the Governor believed was being enacted. Perhaps the clearest expression of the Legislature's intent on this point is its decision to reject the typical postconviction procedure. (See, e.g., *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1116 [relying on rejection of proposed amendment to interpret statute].)

On August 20, 2018, the Assembly passed what would become the final version of S.B. 1437, and returned the bill to the Senate. As relevant here, the Assembly's amendments shifted responsibility for gathering documents from the court to prosecutors, shifted responsibility for serving counsel from the court to the petitioner, clarified that the court must, upon request, appoint counsel to represent the petitioner, and clarified the showing a petitioner must make to qualify for a resentencing hearing.[9] (Compare S.B. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, with *id.*, as amended Aug. 20, 2018.)

On August 28, 2018, shortly after the Assembly passed the amended version of S.B. 1437, the Judicial Council wrote to Senator Nancy Skinner, chairwoman of the Senate Public Safety Committee and the bill's author, to request additional changes. The letter explained that the "council appreciate[d] the

---

[9] As first introduced in the Senate, S.B. 1437 required the court to hold a resentencing hearing if it found there was "*sufficient evidence* that the petitioner falls within the provisions of this section … ." (S.B. 1437 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, § 6, italics added.)

August 20, 2018 amendments, which include[d] the majority of the amendments requested by the council." (Sharon Reilly, Jud. Council of Cal., letter to Sen. Nancy Skinner (2017–2018 Reg. Sess.) Aug. 28, 2018, p. 1, available at <https://www.courts.ca.gov/documents/ga-position-letter-senate-sb1437-skinner.pdf> [as of May 26, 2020], archived at <https://perma.cc/6GKB-BNQM> [hereafter Jud. Council letter].) Nevertheless, the Council stressed, "the bill should be amended to authorize courts to summarily dismiss petitions that do not make a prima facie case without a hearing consistent with petitions for writs of habeas corpus and for resentencing under Proposition 36 and Proposition 47." (*Id.* at pp. 1–2, fn. omitted.)

The letter continued:

> "Consistent with these other provisions of law, the council believes that it is more efficient for courts to have the ability to deny petitions filed pursuant to SB 1437 early in the process when they do not make a prima facie showing. …
>
> "[T]he council is concerned that appointing counsel and involving the prosecution in the petition process before an initial review by the court will place unnecessary burdens on courts and on the prosecutors and public defenders to review and respond to petitions that the judge will ultimately summarily deny at a hearing because the petition does not make a prima facie showing."

(Jud. Council letter, *supra*, p. 2.)

17

Thus, the Judicial Council asked Senator Skinner to amend S.B. 1437 to adopt the following procedure:

1. Upon receiving the petition, "the court shall determine whether the petitioner has made a prima facie showing that [he or she] falls within the provision of the bill …"; "before making that determination," "the court *may*"— but is not required to—"request an informal response from the prosecutor";

2. "if the court determines that the petitioner" has made "a prima facie showing, the court shall issue an order to show cause (OSC)";

3. *only then* must the court appoint counsel to represent the petitioner;

4. within 60 days of service of the OSC, rather than from service of the petition, the prosecutor must file and serve a response; the petitioner may reply within 30 days after that; and

5. the court shall hold a hearing 60 days after briefing is complete.

(Jud. Council letter, *supra*, p. 2, italics added.) In short, the Judicial Council urged the Legislature to adopt the procedure the majority suggests the statute already requires—the procedure used in this case.

The Senate passed S.B. 1437 as amended on August 30, 2018. On September 13, 2018, the Judicial Council sent a similar letter to the Governor, urging him to veto the bill. (Cory T. Jasperson, Jud. Council of Cal., letter to Governor Edmund G.

18

Brown, Jr. (2017–2018 Reg. Sess.) Sept. 13, 2018, available at <https://www.courts.ca.gov/documents/ga-position-letter-senate-sb1437-skinner.pdf> [as of May 26, 2020], archived at <https://perma.cc/6GKB-BNQM>.)

Other groups opposed the bill for similar reasons. For example, the San Diego District Attorney urged the Governor to veto the legislation because, among other reasons:

> "To petition for resentencing, SB 1437 requires that a person seeking resentencing merely submit a request indicating that he or she was convicted of murder; that the prosecution theory for murder *could* have included felony murder, or murder by natural and probable consequences; that [the petitioner] could not have been convicted [of murder] under current law; and the superior court case number, the year of conviction, and whether the petitioner requests the appointment of counsel.

> "The prosecutor would be required **in each and every case in which a petition has been filed**, to research the facts and theories upon which a murder conviction was based, and respond accordingly."

(Summer Stephan, San Diego Dist. Atty., letter to Governor Edmund G. Brown, Jr. (2017–2018 Reg. Sess.) Sept. 4, 2018, Governor's chaptered bill files, ch. 1015, p. 2, bold added; see *id.* at p. 3 [S.B. 1437 "does not provide an adequate mechanism to deter frivolous petitions"].)

Ultimately, however, although the Judicial Council and other stakeholders had urged it to adopt procedures "consistent

with petitions for writs of habeas corpus and for resentencing under Proposition 36 and Proposition 47," the Legislature rejected that approach. (Jud. Council letter, *supra*, p. 2, fns. omitted.) Instead, it created new, different rules. Under those new rules, when the court receives a sufficient petition, it *must* appoint counsel if the petitioner has requested it; the prosecutor *must* take a position on whether the petitioner is eligible for a resentencing hearing; and the court *must* give the petitioner, represented by counsel, a chance to respond. I assume that choice was intentional.

Nevertheless, the majority declines to consider the Judicial Council's views because, it insists, letters to the Governor are "not cognizable legislative history." (Maj. opn. *ante*, p. 18.) The majority is mistaken: This was not just any letter; it was a letter from the Judicial Council of California.

"The Judicial Council is the policymaking body of the California courts, the largest court system in the nation. Under the leadership of the Chief Justice and in accordance with the California Constitution, the council is responsible for ensuring the consistent, independent, impartial, and accessible administration of justice. Judicial Council staff help implement the council's policies." (<https://www.courts.ca.gov/policyadmin-jc.htm> [as of May 26, 2020], archived at <https://perma.cc/5ZZQ-M3TM>.) Broadly, the Judicial Council is to the Chief Justice as executive agencies are to the Governor.

As such, reports from the Judicial Council to the Governor are official statements from the judicial branch, and are analogous to the enrolled bill reports executive agencies present to the Governor after a bill's passage and before the Governor signs it. And enrolled bill reports are proper legislative history.

20

(See, e.g., *People v. Ruiz* (2018) 4 Cal.5th 1100, 1111, fn. 3 ["We have often found enrolled bill reports to be ' "instructive" ' as to the Legislature's intent, purpose, and understanding in enacting a statute, because they are 'generally prepared within days after' the statute's passage and are written by 'governmental department[s] charged with informing the Governor about the [statute] so that he can decide whether to sign it, thereby completing the legislative process.' [Citation.]"]; see also *Pacific Bell v. Public Utilities Com.*, *supra*, 79 Cal.App.4th at p. 279 [citing correspondence from the Judicial Council to the bill's author as evidence of legislative intent in successive drafts of legislation]; *Ghanooni v. Super Shuttle* (1992) 2 Cal.App.4th 380, 387–388 [considering unadopted Judicial Council proposals as indicators of legislative intent].)[10]

**6.    Appointment of counsel is not an absurd result.**

Nor is appointment of counsel for all petitioners who file complying petitions an absurd result the Legislature could not possibly have intended. (See *People v. Escarcega* (2019) 32 Cal.App.5th 362, 381.)

To be sure, the Public Defender and Alternate Public Defender, as amici curiae, acknowledge there may be scenarios in which, as a practical matter, the court would be able, summarily

---

[10] The majority attempts to distinguish these cases on the ground that the Judicial Council letters were communicated to the various committee chairs rather than to the bill's author. (Maj. opn. *ante*, pp. 22–23, fn. 14.) Yet they appear to agree that letters communicated to committee chairs are proper legislative history. (*Ibid*.) Here, the letter was written to Senator Skinner, who not only authored S.B. 1437, but was also the chairwoman of the Senate Public Safety Committee.

21

and without controversy, to deny a complying petition under section 1170.95 without the benefit of briefing. But both amici express concerns about the contours of such a rule and urge that it should not apply if the petitioner was convicted of a *potentially* qualifying offense or in cases in which "there is any legally cognizable theory that might be advanced as to why a petitioner might be entitled to relief … ." Similarly, the District Attorney suggests the court should appoint counsel unless "the petition and any reasonably available court records … conclusively show that the defendant is ineligible as a matter of law … ."

Against these amorphous standards, appointment of counsel upon filing of a facially valid petition presents a clear, easy-to-apply rule. The question, then, is whether the Legislature could not possibly have intended the consequences of such a bright-line rule. I see no absurdity.

First, the majority has not persuaded me that summarily denying petitions without appointing counsel would further judicial economy. As amicus curiae Professor Kate Chatfield notes, clear-cut "cases can be addressed expeditiously while still complying with the statute and providing a petitioner the process he or she is due." If, based on the record of conviction or the facts of the case, a petition is clearly meritless, the prosecutor can submit a simple brief summarizing why the petitioner is not entitled to a resentencing hearing. Such a brief need be no longer than the order the court prepared in this case. In response, counsel for petitioner may simply submit on the record. Reviewing such filings places a de minimis extra burden on trial courts.

On the other hand, assembling and reviewing the record to spot potential claims itself, as the court may have done here,[11] rather than relying on counsel to do it, as the statute contemplates, creates *more* work for the trial courts, not less—especially in cases in which the superior court has destroyed records that the prosecution may still have.[12]

But even assuming the practice leads to short-term efficiencies, those savings are a false economy that shifts work from trial counsel to appellate counsel and from the trial courts to the appellate courts. As the Public Defender explains:

---

[11] Contrary to the majority's apparent belief, the record does not reveal what documents, if any, the trial court reviewed before concluding that as the actual killer, Tarkington was ineligible for relief. (Maj. opn. *ante*, at p. 28, fn. 15.) I note, however, that a trial court should not resort to information never offered in open court without affording the parties a reasonable opportunity to meet such information before judicial notice is taken. (Evid. Code, § 455, subd. (b).) One of the corollaries of canon 3 of the Code of Judicial Conduct ("A Judge Should Perform the Duties of Judicial Office Impartially, Competently, and Diligently") is that a judge must not independently investigate facts in a case and must consider only the evidence presented, unless otherwise authorized by law. (Code Jud. Conduct, commentary to canon 3B(7).) Any factual inquiry independently undertaken by the trial court in this case without affording Tarkington a reasonable opportunity to meet such information is, in my view, uncharacteristic of an impartial judge.

[12] Indeed, as discussed above, the Legislature **removed** the requirement that the courts assume the record-assembly burden that the majority now places on them. It seems clear that the Legislature's intent was for the prosecution to assemble the records **instead** of the courts rather than in addition to them.

"In cases where judges have denied the petitions without appointment of counsel, Amicus's Office has ended up filing motions to vacate those denials. The refusals to do so have resulted in our filing Notices of Appeal, which are wending their way to this court. We expect a substantial volume of appeals in this posture. It is likely that this court will remand for evidentiary hearings in many such cases. If relief is then denied, yet another appeal will result."

Similarly, the Alternate Public Defender notes that since section 1170.95's effective date, her office "has experienced more than 100 summary denials" of sufficient petitions "without ever appointing the A.P.D. and without ever providing an opportunity to be heard, based solely on the court's in camera review of the petition." As with the Public Defender's cases, "Notices of appeal have been filed in virtually all of these cases, but no opportunity to be heard to flesh out the issues or to develop a record was ever permitted by the summary denial. This is problematic because the issues that would have been raised and the facts that would have been presented had the petitioner been given an opportunity to be heard have not been resolved by appellate courts at the time of the denial. As a result, many of these cases will often need to be remanded to the trial courts in order to develop that record. The refusal by the superior court to appoint counsel will likely generate entirely avoidable appellate litigation which could be avoided by appointing counsel."

This court's own experience bears this out: When the court does not give the parties an opportunity to flesh out the issues, raise facts not previously before any court, or otherwise develop a record below, the appellate record we receive is incomplete and

24

difficult to review. Cases in which the prosecution assembles the record below and writes a short explanatory brief before defense counsel submits on the record are much less time-consuming on appeal than cases like this one, in which we cannot even determine the basis for the trial court's decision. That is true even when, as the majority suggests, the court's ultimate denial of the petition is correct. (Maj. opn. *ante*, at pp. 26–27.) Indeed, in this case, the majority's conclusion that the court correctly determined Tarkington was not eligible for resentencing apparently rests on its independent review of the record in Tarkington's prior appeal—a time-consuming task the Legislature attempted to spare it. (*Id.* at pp. 27–28.) And its ability to do so rested on mere luck: Tarkington's case is recent enough that we still had the record in our archives. That is not always true.

Second, because section 1170.95 requires appointment of counsel, briefing by the prosecutor, the opportunity for petitioner's counsel to present a reply brief, and an evidentiary hearing when necessary, the Legislature understood there would be costs to local agencies. (Stats. 2018, ch. 1015, p. 95 ["By requiring the participation of district attorneys and public defenders in the resentencing process, this bill would impose a state-mandated local program."].) Thus, S.B. 1497 provided: "If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies … for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code." (Stats. 2018, ch. 1015, § 5.)

Third, the judiciary's resources are not the Legislature's only concern. The Legislature can—and apparently did—conclude

that the risk courts would erroneously deny petitions by unrepresented litigants and the substantial cost of continuing to house those litigants in prison outweighed any efficiencies to be gained by appointing counsel at a later stage of proceedings. I can infer the Legislature's view on this subject because, as discussed in detail above, the Judicial Council made that very argument to support its rejected amendment. (Jud. Council letter, *supra*, p. 2.)

In any event, the question is not, as the *Lewis* court appears to suggest, whether "[a]llowing the trial court to consider its file and the record of conviction" before appointing counsel is "sound policy." (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138.) The question is whether it is absurd to believe the Legislature adopted a different one. (See, e.g., *California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 588 ["We must exercise caution using the 'absurd result' rule; otherwise, the judiciary risks acting as a ' "super-Legislature" ' by rewriting statutes to find an unexpressed legislative intent."]; *Austin v. Medicis* (2018) 21 Cal.App.5th 577, 597, fn. 7 ["Certainly, as [appellant] argues, there are compelling policy reasons to support a different rule, and if the Legislature wishes to apply the tolling rules more broadly, it may do so. But it is up to the Legislature, and not the courts, to rewrite this statute—and until it does, we must apply [the statute] as written."].)

**7.    Conclusion**

In this case, Tarkington submitted a petition under section 1170.95 in which he complied with all the requirements in subdivision (b) and requested the appointment of counsel. The trial court was therefore required to appoint counsel to represent him and await the prosecution's mandatory response and Tarkington's optional reply before deciding whether to issue an order to show cause. It did not. Therefore, I would remand for the court to comply with the requirements in section 1170.95, subdivision (c).

LAVIN, J.

27